661 So.2d 437 (1995)
Sheila SALLEY
v.
Richard SALLEY.
No. 95-C-0387.
Supreme Court of Louisiana.
October 16, 1995.
Rehearing Denied November 17, 1995.
W. Bernard Kramer, Alexandria, for Applicant.
Steven P. Mansour, Alexandria, for Respondent.
KIMBALL, Justice.[*]
Sheila Salley ("Sheila"), plaintiff/appellant, and Richard Salley ("Richard"), defendant/appellee, *438 were married on November 24, 1973. The couple separated on May 17, 1991, and filed for divorce on May 21, 1991. A judgment of divorce was rendered on January 6, 1992. On January 11, 1993, Sheila instituted this action to partition community property, alleging proceeds from the redemption of stock owned by Richard were community property. The trial court ruled in favor of Richard, and the third circuit court of appeal affirmed. Salley v. Salley, No. 94-418 (La.App. 3 Cir. 11/23/94), 647 So.2d 1164. We granted writs to determine the proper allocation of the burden of proof under Krielow v. Krielow, 93-2539 (La. 4/11/94), 635 So.2d 180, to proceeds of a stock redemption in a closely held family corporation. Salley v. Salley, No. 95-0387 (La. 4/7/95), 652 So.2d 1339.

FACTS
Richard began work with James Salley, Inc., a family-owned chain of food stores, in 1972 as a stockboy. He later worked as a cashier, as a clerk in the produce department and in the meat department, and as a manager of a store. Richard eventually became president of James Salley, Inc.
Richard's parents, James W. Salley, Sr. and Mildred Salley, owned and operated James Salley, Inc. At various times from December 1972 to 1982, James and Mildred Salley donated to Richard a total of 370 shares in the corporation. These shares were valued at $37,000.00.
In June of 1986, Richard and his father redeemed their James Salley, Inc. stock to the corporation. As a result of the redemption of his shares, Richard received $814,000.00. Richard made several purchases with the funds earned in the redemption, including immovable property and a variety of securities.
In this suit to partition community property, Sheila alleges that the increase in the value of the stock from $37,000.00 to $814,000.00 is community property. The trial court held that Sheila failed to prove the stock increased in value and, therefore, the proceeds of the stock redemption were Richard's separate property. The third circuit affirmed, holding that although Sheila did prove that the stock increased in value, she had failed to prove that the increase in the value of the stock was due to the uncompensated or undercompensated labor of either spouse as required by La.Civ.Code art. 2368 and Krielow v. Krielow, supra. We granted Sheila's writ application because she alleged the court of appeal improperly allocated the burden of proof and improperly required her to prove the community endured hardship, inequities, or sacrifices in order for her to satisfy her burden. Because we find the court of appeal neither improperly allocated the burden of proof nor placed an inappropriate burden on Sheila, we affirm.
LAW
Louisiana Civil Code article 2368 states: If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor.
In Krielow v. Krielow, 93-2539 (La. 4/11/94), 635 So.2d 180, this court addressed the burden of proof under Civil Code article 2368. Lynn Krielow, in a suit against Carl Krielow to partition community property, alleged that stock which was the separate property of Carl had increased in value during the marriage, and the increase was community property. At trial Lynn proved the stock increased in value during the marriage as a result of Carl's undercompensated labor. The district court and the court of appeal held under Article 2368 that the increase was not community property because Lynn failed to prove the increase was not a result of factors other than the uncompensated or undercompensated labor of the other spouse. Krielow v. Krielow, 622 So.2d 732 (La.App. 3 Cir.1993). We reversed, holding that a claimant spouse under Article 2368 has the burden of proving: (1) the property is separate, (2) the property increased in value, and (3) the increase in value was based on the uncompensated or undercompensated labor *439 of the other spouse; the burden then shifts to the other spouse to prove that the increase in value was due to factors other than the uncompensated or undercompensated labor. Krielow, supra, 93-C-2539 at p. 8, 635 So.2d at 185.
Thus, after a claimant spouse has proven the property is separate, he or she must then prove that the property increased in value during the existence of the matrimonial regime. Krielow established that in order for a plaintiff to show increase in value he or she must prove: (1) the condition of the property at the time of the marriage, (2) the value of the property at dissolution in the state it was at the time of the marriage, (3) the real value of said property with all of the improvements in the condition it was at the time of dissolution of the community, and (4) the difference between the two estimates. Krielow, supra, 93-C-2539 at p. 4, 635 So.2d at 183.
Once the claimant spouse has proven the property is separate and it increased in value, in order to prevail under Article 2368 he or she must then prove common or community labor of the spouses was expended on the separate property. Krielow, supra, 93-C-2539 at p. 4, 635 So.2d at 183. It is not necessary, however, for the claimant spouse to show that his or her labor was expended on the separate property; it is enough to show the labor of either spouse was so expended. In Abraham v. Abraham, 87 So.2d 735 (La.1956), this court examined Article 2408, the predecessor to Article 2368.[1] In Abraham, we held "common labor or industry of the spouses" means the labor of either spouse during the existence of the marriage. Thus, the word "common," as used in the article, is synonymous with "community." Abraham, supra, 87 So.2d at 738.
Further, a claimant spouse must show the common labor expended on the separate property was uncompensated or undercompensated. Krielow, supra, 93-C-2539 at p. 8, 635 So.2d at 185; see also Katherine S. Spaht and W. Lee Hargrave, Matrimonial Regimes, § 7.18, 16 Louisiana Civil Law Treatise (1989). Once the claimant spouse proves that uncompensated or undercompensated community labor was expended on the separate property and caused it to increase in value, the burden then shifts to the owner of the separate property to prove that some or all of the enhancement in value of the separate property occurred because of factors other than the uncompensated or undercompensated community labor. Krielow, supra, 93-C-2539 at p. 8, 635 So.2d at 185.
Article 2368 is based on the following policy, as we enunciated in Krielow:

A spouse should not be permitted to deprive the community of a spouse's earning that would be community property when that community labor enhances or increases the value of the laboring spouse's separately owned property. If a claim exists because the laboring spouse was either uncompensated or undercompensated, the measure of reimbursement is one-half of the increase attributable proportionately to the uncompensated labor of the spouse.
Krielow, supra, 93-C-2539 at p. 4, 635 So.2d at 183 (emphasis added). The salary and wages of a spouse are community property. La.Civ.Code art. 2338. Therefore, because a spouse's compensation in return for his labor or industry is community property, La.Civ. Code art. 2338, to the extent that the spouse's uncompensated or undercompensated labor increases the value of his separate property, the community has a claim against him.

ANALYSIS
In her first three assignments of error Sheila asserts the court of appeal misapplied Krielow in allocating to her, rather than to Richard, the burden of proving the capital gain on the stock was a result of the uncompensated or undercompensated labor of either spouse.
Applying Krielow to the instant case, the initial determination to be made is whether the stock and the money received upon its redemption were Richard's separate *440 property. Since Richard's parents donated the stock to him individually, the shares of stock were Richard's separate property. La. Civ.Code art. 2341. Thus, the money received when Richard sold the stock back to James Salley, Inc. is also Richard's separate property as it is "property acquired with separate things" under La.Civ.Code art. 2341.[2]
Sheila alleges, however, that the proceeds of the redemption became community property because the increase in value of the separate property was the result of uncompensated or undercompensated community labor.[3]
The trial court held Sheila failed to prove the stock increased in value, while the court of appeal determined that "Sheila Salley arguably established that her former husband's stock in Salley's Food Store, Inc., increased in value during the existence of the community property regime." Salley, supra, No. 94-418 at p. 7, 647 So.2d at 1167. We agree with the court of appeal's finding that Sheila Salley satisfied her burden of proving the stock increased in value. The evidence shows, and the parties do not dispute, that Richard's 370 shares of stock were originally valued at $37,000.00 and were redeemed during the marriage for $814,000.00; thus, the value of the stock increased by $777,000.00 during the existence of the matrimonial regime.
Because the separate property of Richard was found to have increased in value during the marriage, we must next determine whether Sheila proved the increase in value was a result of Richard's uncompensated or undercompensated labor.[4] Addressing this issue, the third circuit stated:
We find nothing in the record, however, that even remotely suggests that the increase in the value of the stock was due to Richard's uncompensated or undercompensated labor.
Salley, supra, No. 94-418 at p. 7, 647 So.2d at 1167.[5]
During the fourteen years Richard was employed by James Salley, Inc. he received over $750,000.00 in salary and wages.[6] Sheila made no allegations in the trial court and *441 presented no evidence, expert or otherwise, that the salary and wages paid to Richard were below the market level for the various positions in which he was employed.[7] As stated in Krielow, supra, 93-C-2539 at p. 8, 635 So.2d at 185, the burden is on Sheila to prove that Richard was uncompensated or undercompensated. There is no evidence in this record to suggest Richard's salary was below market value for the services he performed for James Salley, Inc. or that he was in any way undercompensated for his labor.[8]
Sheila also argues the lower courts erred in finding Richard was not undercompensated based on the fact that James Salley, Inc. never paid dividends on its stock, even though the stock increased in value by $777,000.00. Harry G. Henn and John R. Alexander, in Laws of Corporations state:
[T]he distribution of dividends, even on shares with a dividend preference, is usually discretionary, within the business judgment rule of the board of directors.
Only when abuse of discretion is shown will courts substitute their own judgment and order a distribution of dividends. Abuse of discretion is found only if there is evidence of fraud or bad faith or a clear case of unreasonableness.
Harry G. Henn and John R. Alexander, § 327 Laws of Corporations 913-14 (1983). Given that the distribution of dividends falls under the discretion of the board of directors and that Sheila has neither alleged nor presented evidence of any fraud, bad faith, or unreasonableness in James Salley, Inc.'s failure to pay dividends, we find Sheila has failed to prove Richard was undercompensated because he did not receive dividends on the stock he owned.
We also find that, in this case the corporation's failure to pay dividends is irrelevant. Sheila's burden under Article 2368 is to prove Richard's labor was undercompensated. As stated earlier, Sheila put on no evidence to show Richard's salary was below market level for the various positions he held, and, in fact, the salaries appear to be more than adequate. Additionally, Sheila has not alleged that James Salley, Inc., as part of its employment contract with Richard, promised to pay him dividends on any James Salley, Inc. stock he owned. Therefore, in this case, we see no connection between the failure of James Salley, Inc. to pay dividends to its stockholders and the issue of whether Richard was undercompensated as an employee of that company.
Because Sheila failed to carry her burden of proving Richard was undercompensated, the burden did not shift to Richard to prove the enhancement in value resulted from other factors.

CONCLUSION
Sheila failed to prove the increase in the value of Richard's James Salley, Inc. stock was a result of the uncompensated or undercompensated labor of Richard as required by La.Civ.Code art. 2368 and Krielow v. Krielow, supra. Therefore, we affirm the judgment of the court of appeal.
Sheila also assigns as error the trial court's rulings that a certificate of deposit and an *442 undivided one-half interest in a twenty acre tract of land are Richard's separate property. We find no manifest error in the trial court's rulings.[9]
Affirmed.
JOHNSON, J., dissents.
NOTES
[*] Judge Ned E. Doucet, Jr., Court of Appeal, Third Circuit, sitting by assignment in place of Justice James L. Dennis. Calogero, C.J. not on panel. Rule IV, Part 2, § 3.
[1] In Krielow, supra, 93-C-2539 at p. 6, 635 So.2d at 184, this court held that in enacting Article 2368, the legislature did not intend to overrule the jurisprudence interpreting Article 2408.
[2] Civil Code art. 2341 states, "The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime."

Changing the form of separate property from stock to cash through a sale of stock in exchange for cash does not change the nature of the property from separate to community.
[3] Sheila additionally argues that even if Article 2368 does not apply, the proceeds of the redemption became community property because they were commingled with community funds, thereby losing their separate nature. Because the trial court found as a matter of fact that the funds were not commingled and because we find no manifest error in that ruling, we pretermit discussion of that issue.

In Stobart v. State Through DOTD, 617 So.2d 880 (La.1993), this court held that "[a] court of appeal may not set aside a trial court's or jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong.'" Id. at 882. A review of the record reveals contradictory evidence presented by each party which involved the trial judge's determination of witness credibility to resolve. After a thorough review of the record we cannot say that the trial court's finding was manifestly erroneous.
[4] Sheila does not allege that she personally contributed labor that increased the value of Richard's James Salley, Inc. stock.
[5] The trial court never reached the issue of adequate compensation, determining that Sheila failed to meet her burden of proving that the separate property increased in value. Salley, supra, No. 94-418 at pp. 7-8, 647 So.2d at 1167.
[6] The record evidence indicates that Richard Salley received the following wages each year: $9,486.00 (1973), $27,900.00 (1975), $29,820.00 (1976), $33,740.00 (1977), $39,500.00 (1978), $57,430.00 (1979), $66,500.00 (1980), $81,200.00 (1981), 100,300.00 (1982), $107,700.00 (1983), $131,200.00 (1984), $43,171.00 (1985), $24,000.00 (1986).
[7] Undercompensation is a question of fact. See Krielow, supra, 93-C-2539 at pp. 7-8, 635 So.2d at 184-85. Therein, this court held the plaintiff proved undercompensation by use of expert testimony.
[8] We note that Sheila also argues the court of appeal improperly required her to prove the community endured hardship, inequities, or made any sacrifice which contributed to the increased value of the stock. The court of appeal, after holding there was no evidence to show the increase in the value of the stock was due to Richard's uncompensated or undercompensated labor, stated "nor do we find any evidence in the record that suggests Sheila Salley contributed in any way to the increase in the value of the stock in the store. Plaintiff failed to present any evidence establishing that the community endured any hardship or inequities or made any sacrifices that contributed to the increased value in Richard Salley's stock." Sheila specifically points to this sentence as evidence the court of appeal misapplied Krielow.

Under Krielow, the claimant spouse is not required to prove that he or she contributed to the increase in the value of the separate property nor that the community endured any hardship, inequities, or sacrifices that contributed to the increased value of the separate property. However, the language in the court of appeal's opinion to that effect is dictum and of no consequence because Sheila failed to prove that Richard was uncompensated or undercompensated in the first place.
[9] In reference to the twenty acre tract of land the court of appeal upheld the trial court's ruling stating "we again find no manifest error." Salley, supra, No. 94-418 at p. 16, 647 So.2d at 1170. However, the court of appeal went on to incorrectly summarize the trial court's ruling, in effect stating that the entire twenty acre tract, and not just an undivided one-half interest, was the separate property of Richard.

The trial court held: (1) an undivided one-half interest in the twenty acre tract was the community property of Richard and Sheila, and (2) an undivided one-half interest in the tract was the separate property of Richard. The record evidence indicates that Richard purchased an undivided one-half interest with his father-in-law, Webster Saucier, during the marriage and Richard presented no evidence to prove that the purchase was made with separate funds. We find no manifest error in the trial court's ruling that this one-half interest was the community property of Richard and Sheila. The record evidence also indicates that Richard purchased Mr. Saucier's one-half interest with his separate property. We find no manifest error in the trial court's ruling that this one-half interest is Richard's separate property.