728 So.2d 473 (1998)
Charles L. STEWART, Plaintiff Appellee/Appellant,
v.
Peggy Dianne STEWART, Defendant Appellant/Appellee.
No. 98-496
Court of Appeal of Louisiana, Third Circuit.
December 16, 1998.
*474 Richard E. Lee, Pineville, for Charles L. Stewart.
Michael Hathorn Davis, Alexandria, for Peggy Dianne Stewart.
BEFORE: THIBODEAUX, COOKS, WOODARD, DECUIR, and PETERS, Judges.
THIBODEAUX, Judge.
This suit involves the partition of community assets between former spouses, Dianne Stewart and Charles Stewart. Both parties appeal the trial court's judgment to partition the community property by public sale. The defendant, Dianne Stewart, appeals the trial court's judgment not to reimburse her for expenses incurred in the maintenance of the family automobiles in her exclusive use during the separation, while the plaintiff, Charles Stewart, entreats us to reverse the trial court's judgment which characterized as community property the increase in value during the marriage of his separately-owned shares of stock.
For the following reasons, we affirm in part and reverse in part the judgment of the trial court. We conclude that the increase in the value of Mr. Stewart's stock is not a community asset. The trial court erred on this issue, but correctly decided that Ms. Stewart is not entitled to reimbursement for the maintenance expenses on the family automobiles. The trial court also erroneously ordered the partition of the community property by public sale. We remand to allow for a proper determination of the division of the assets.
I.
ISSUES
We shall consider:
1. whether the trial court erred in ordering the community property to be sold at a public sale before exploring other options available under La.R.S. 9:2801;
2. whether the trial court erred in not ordering Dianne Stewart to be reimbursed for expenses incurred for the maintenance of the two family vehicles in her exclusive use during her separation from Charles Stewart; and,
3. whether the trial court erred in characterizing the increase in the value of Charles Stewart's separately-owned shares of stock as community property.

II.

FACTS
Charles Stewart is a foreman who supervises the construction and maintenance of power lines for Red Simpson, Inc., a power line contracting company. He has a tenth grade education and had been employed by Red Simpson, Inc. for about twelve years at the time of trial.
Charles Stewart was given 21% shares of stock in a subsidiary corporation of Red Simpson, Inc., Pete Singleton, Inc. (later renamed Bo Stewart, Inc.) when he began his employment on January 2, 1986. Under the *475 employment contract, Mr. Stewart was given this stock in exchange for his agreement not to compete with Red Simpson, Inc. upon his termination of employment. The value of the stock was to be calculated at the end of each fiscal year. The value of Mr. Stewart's stock would either decrease or increase depending upon whether his crew generated a profit for that year. If his crew made a profit, Mr. Stewart's stock value would increase by 21% of the amount of the profit for that year. If the crew was "in the red," the book value of the stock would decrease by 21% of the amount of the deficit for that year. The stock had no value at its issuance.
The stock value was to be kept by Red Simpson, Inc. in its general funds until the termination of Mr. Stewart's employment with Red Simpson, Inc. Upon his termination, Mr. Stewart would be obligated to sell his shares of stock in Bo Stewart, Inc. back to Red Simpson, Inc.; its value would be paid over a period of four years and ninety days.
Charles and Dianne Stewart were married on May 18, 1988. The matrimonial regime ended on October 11, 1995. At the time of their marriage, Mr. Stewart's stock was worth $4,646.00. At the end of the matrimonial regime, the stock's value had increased to $142,147.00.
During the period the Stewarts were separated, Dianne Stewart and her daughter had exclusive use and control of the 1988 Ford pick-up truck and a 1994 Ford Probe. During this time, Ms. Stewart incurred expenses in the maintenance of the two vehicles in the amounts of $1,266.19 and $1,565.83, respectively.

III.

LAW AND DISCUSSION

Public Sale of Community Property
Both parties contend that the trial court erred in ordering all community property, with the exception of the stocks, be sold at a public sale. We agree.
The mandatory procedure for effecting a partition is provided by La.R.S. 9:2801. Barry v. Barry, 501 So.2d 897, 898 (La.App. 5 Cir.1987). Louisiana Revised Statute 9:2801 applies "[w]hen the spouses are unable to agree on a partition of community property or on the settlement of the claims between spouses arising from the matrimonial regime." Champagne v. Champagne, 93-840 (La.App. 5 Cir. 3/16/94); 635 So.2d 1203, 1205. Such is the situation presented here.
Louisiana Revised Statute 9:2801(4) states the following:
(4) The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
© The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
(d) In the event that the allocation of an asset, in whole or in part, would be *476 inequitable to a party, the court may order the parties to draw lots for the asset or may order the private sale of the asset on such terms and conditions as the court deems proper, including the minimum price, the terms of sale, the execution of realtor listing agreements, and the period of time during which the asset shall be offered for private sale.
(e) Only in the event that an asset cannot be allocated to a party, assigned by the drawing of lots, or sold at private sale, shall the court order a partition thereof by licitation. The court may fix the minimum bids and other terms and conditions upon which the property is offered at public sale. In the event of a partition by licitation, the court shall expressly state the reasons why the asset cannot be allocated, assigned by the drawing of lots, or sold at private sale.
The trial court failed to follow the mandatory procedures set out by law. Louisiana Revised Statute 9:2801(4)(e) explicitly states that licitation is only allowed when the community property cannot be allocated, sold at private sale, or assigned by drawing lots. Partitions in kind are favored where the nature of property permits. Crews v. Crews, 432 So.2d 377, 379 (La.App. 1 Cir.1983). The trial court failed to explore the other considerations and alternatives set forth in La.R.S. 9:2801(4) before ordering a public sale.
Further, the court must state the reasons why the asset cannot be handled utilizing a less drastic procedure. Barry, 501 So.2d at 899. The trial court did not particulate, as required by La.R.S. 9:2801(4)(e), why partition by licitation was chosen. Without the benefit of these reasons, it is impossible to ascertain whether the community property was susceptible to division by allocation, assignment by drawing lots, or whether a private sale was the preferable method of dividing the property.
For these reasons, we reverse the trial court's judgment to partition the assets by licitation, and remand to allow the trial court to follow the procedures set forth in La.R.S. 9:2801. We decline Mr. Stewart's invitation to divide the assets, rather than remand. In our view, the record is too incomplete to issue a definite pronouncement on this issue.

Reimbursement of Vehicle Expenses
Ms. Stewart contends the trial court erred by denying her reimbursement for expenses she incurred in the maintenance of the two family automobiles which were used exclusively by her during her separation from the plaintiff, Charles Stewart. We disagree.
Ms. Stewart acknowledges the decision by this circuit in Preis v. Preis, 94-442 (La.App. 3 Cir. 11/2/94); 649 So.2d 593, which did not allow for reimbursement for payments made on the family automobile which was in the exclusive use of one spouse. However, Preis, according to Ms. Stewart has been modified by McCarroll v. McCarroll, 96-2700 (La.10/21/97); 701 So.2d 1280. However, unlike McCarroll, we are not dealing with a lesionary problem, the assessment of fair rental value for a spouse's use of a family residence and its impact in determining lesion.
La.Civ.Code art. 2369.3 states that "a spouse has a duty to preserve and to manage prudently former community property under his control." However, La.Civ.Code art. 806 provides:
A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to third person, is entitled to reimbursement from the other co-owner and in proportion to their share. If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.
Automobiles are unique and very different in nature and value from other types of community property such as real estate, livestock, stocks, etc. Automobiles tend to depreciate in value over a period of time and the uses of the vehicle is directly related to its depreciation. Gachez v. Gachez, 83-782 (La.App. 5 Cir.1984); 451 So.2d 608, 613, writ denied, 84-1121 (La.9/14/84); 456 So.2d 166. Equity dictates that Ms. Stewart be *477 charged for the full amount of maintaining an asset which [s]he had exclusive use while that asset steadily declined in value. Davezac v. Davezac, 483 So.2d 1197, 1199 (La.App. 4 Cir.1986).
Preis is buttressed by two other decisions by this circuit, Gautreau v. Gautreau, 96-1548 (La.App. 3 Cir. 6/18/97); 697 So.2d 1339 and Bergeron v. Bergeron, 96-1586 (La.App. 3 Cir. 4/9/97); 693 So.2d 199, which have not allowed for reimbursement of expenses incurred for maintaining an automobile which was under the exclusive use and control of one spouse. We have not been persuaded to alter the positions articulated in these decisions. Therefore, we affirm the trial court's judgment to deny reimbursement expenses to Ms. Stewart.

Increase in Value of the Stock
Mr. Stewart correctly contends that the trial court erred when it classified the increase in value of his stock as part of the community property.
The trial court was correct in classifying the stock itself as Mr. Stewart's separate property, since the stock was acquired by Mr. Stewart two years prior to his marriage to Dianne Stewart. See La.Civ.Code art. 2341.1. Because the stock is Mr. Stewart's separate property, the court incorrectly applied La.Civ.Code art. 2338 which pertains to community property. Instead, the court should have applied La.Civ.Code art. 2368 which pertains to an increase in value of separate property.
Article 2368 provides:
If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor.
In applying Article 2368, it is necessary for this court to determine whether the increase in the value of Mr. Stewart's stock ownership plan was the result of his uncompensated labor or industry. Krielow v. Krielow, 93-2539 (La.4/11/94); 635 So.2d 180 and Salley v. Salley, 95-0387 (La.10/16/95); 661 So.2d 437 are persuasive. In both Krielow and Salley, the court was faced with the same issue. In each case, the court had to decide whether the increase in value of a spouse's stock, which was his separate property, should be included in the community property of which the wife is entitled to one-half under La.Civ.Code art. 2368.
In Krielow, the court held that "if a claim exists because the laboring spouse was either uncompensated or undercompensated, the measure of reimbursement is one half of the increase attributable proportionally to the uncompensated labor of the spouse." Krielow, 635 So.2d at 183. Salley stated that "a claimant spouse under Article 2368 has the burden of proving: (1) the property is separate, (2) the property increased in value, and (3) the increase in value was based on the uncompensated labor of the other spouse; the burden then shifts to the other spouse to prove that the increase in value was due to factors other than the uncompensated or undercompensated labor." Salley, 661 So.2d at 438-39, citing Krielow, 635 So.2d at 185.
It is undisputed that the stock was Mr. Stewart's separate property and it increased in value during the marriage. The critical inquiry is whether the increase in the value of the stock was the result of Mr. Stewart's uncompensated or undercompensated labor. Mr. Stewart is a man with at tenth grade education who was employed with Red Simpson, Inc. as a foreman. During his employment with Red Simpson, Inc. and while married to Ms. Stewart, his average income was $41,000.00 per year. He was paid two or three dollars more than the average foreman in this business in the South because Red Simpson, Inc. had the objective of "sweetening the pot" so their employees would not want to leave their employment. Clearly, Mr. Stewart was adequately compensated for his work with Red Simpson, Inc., in light of his educational background and in comparison with the salaries of others similarly situated in the same job. Since Ms. Stewart fails to satisfy the third element of La.Civ. Code art. 2368, she is not entitled to one-half of the increase in value of Mr. Stewart's stock.
The increase in the book value of Bo Stewart, Inc.'s stock was attributed to several *478 factors. The main reason was attributed to the labor of the work crews of Red Simpson, Inc. The increase in the book value was also attributed to the company's insurance policy, its status of being one of the largest power line contractors in the country, the company's safety record and program, and the two long-time journeymen employed by Red Simpson, Inc.
There was also other evidence given at trial which demonstrated the increase in the book value of the stock was not directly related to the labor of Charles Stewart. First, there was a three-month period when Mr. Stewart had no contact with his crews because he was on leave from work, recovering from back surgery. During this period, Bo Stewart, Inc. continued to make a profit. Second, Red Simpson, Inc. had plans to send Mr. Stewart on assignment in Arkansas. During this time, Bo Stewart, Inc. would still continue to operate without Mr. Stewart's supervision. The company anticipated that it would continue to make a profit since it had always done so. Therefore, we conclude that the increase in value of the stock was not related to the work effort of Mr. Stewart.
Because Ms. Stewart did not prove that the increase in the stock's value was based on the uncompensated labor of Mr. Stewart, she failed to sustain the burden of proving a claim under Article 2368. For these reasons, the trial court's judgment is reversed, and the increase in value of Mr. Stewart's stock is properly categorized as his separate property.

IV.

CONCLUSION
Based on the foregoing reasons, we reverse the trial court's judgment insofar as it orders the sale of the parties' community property at a public sale and remand for partition of the community property in accordance with La.R.S. 9:2801. We affirm the trial court's judgment not to reimburse Ms. Stewart for expenses incurred for the maintenance of the two family automobiles while in her exclusive use. Finally, we reverse the trial court's judgment insofar as it includes the increase in stock value of Mr. Stewart's separate stock as part of the community property.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
WOODARD, J., dissents and assigns written reasons.
WOODARD, J., dissenting.
Respectfully, I disagree with the majority's decision that Ms. Stewart is not entitled to share in the increased stock value which accrued during the marriage. While I agree that La.Civ.Code art. 2368 is applicable and that the critical inquiry is whether the increase in the value of the stock was the result of Mr. Stewart's uncompensated or under-compensated labor and industry, I do not agree with the majority's narrow focus and analysis which lead it to its conclusion.
In analyzing this issue, the majority concentrates primarily on Mr. Stewart's salary as it relates to his job description and on whether his day-to-day labor directly affects the value of the stocks. The majority gives no legal significance to the employment agreement, which is the framework upon which his employment and its terms are predicated. For our purposes, the most pivotal term in this agreement is the non-compete clause because, once Mr. Stewart married, it inextricably bound the stocks in question, to a fundamental community asset, a spouse's income and ability to earn a living. Namely, in agreeing not to compete, Mr. Stewart relinquished his right to work and, thus, to earn, in his profession at all, for a certain period of time within Louisiana, Texas, Mississippi, and Arkansas, if he should choose not to work with RSI or if he were terminated. It is obvious that this severely diminished his ability to work and to provide for his family. In fact, within the agreement, the company states:
Employee understands that the provisions hereof may limit his ability to earn a livelihood in a business similar to the business of Corporation, Red Simpson or Subsidiaries in the specified jurisdictions....
(Emphasis added.) Furthermore, RSI impliedly acknowledged the impact of this relinquishment on community property rights by *479 requesting Ms. Stewart's approval when it required her to sign the agreement also. Moreover, this right which Mr. Stewart tendered to RSI in exchange for their stocks relates to the other component of La.Civ. Code art. 2368industry. Thus, logically, this agreement is essential to the analysis of whether Ms. Stewart has a right to half of the income generated because of Mr. Stewart's industry, during the marriage, in exchange for giving up this fundamental community property asset.
The most basic precept of community property law is that income derived from the labor and industry of spouses during the existence of their marriage, belongs to the community. La.Civ.Code art. 2368 embodies this principle in assuring that "if the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to ... one-half of the increase attributed to the common labor."
Mr. Stewart did not pay for the BSI stocks with money but with his industry, defined by Webster, inter alia, as aptitude and diligence. Mr. Simmy Thibeaux, RSI's chief financial officer, confirmed that the stocks, which had the potential for generating additional income, were given in exchange for Mr. Stewart's agreement not to compete. Because the company valued Mr. Stewart's expertise, it was willing to pay him, in the form of stocks, for using it only for its benefit. Said another way, the company gave Mr. Stewart stocks in exchange for him not using his industry to benefit the competition if he were terminated or chose to work for someone else. It can be said, therefore, that Mr. Stewart's salary was intended to provide compensation for his day-to-day labor; the stocks, on the other hand, were to compensate him for his industry.
Because a spouse's income, which is derived from his labor and industry, during the existence of the marriage, belongs to the community, the value placed on a spouse's relinquishment of potential income derived from his labor and industry, likewise, must belong to the community. In the instant case, that value was the increase in the worth of stocks allotted to Mr. Stewart. Thus, Ms. Stewart should be entitled to share in one-half of the income from the stocks which accrued during the marriage.
I am well aware of the precedential value of the supreme court's decisions in Salley and Krielow and submit that the instant case is distinguishable from both because there was no employment contract, inter alia, present in either of these cases, as there is in the case sub judice.