# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-537

**BRENDA BORDELON**

**VERSUS**

**GREGORY P. BORDELON**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2001-2164
HONORABLE GUY ERNEST BRADBERRY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***
## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE
**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, Jimmie C. Peters, Elizabeth A. Pickett, and J. David Painter, Judges.

**PAINTER, J., DISSENTS IN PART AND ASSIGNS WRITTEN REASONS.**

**REVERSED AND RENDERED.**

Jack W. Caskey
704 Ryan Street
Lake Charles, LA 70602
Telephone: (337) 439-8854
COUNSEL FOR:
    Plaintiff/Appellant - Brenda Bordelon

Nathan A. Cormie
Todd Holman Melton
Nathan A. Cormie & Associates
616 Kirby Street
Lake Charles, LA 70601
Telephone: (337) 439-2422
COUNSEL FOR:
    Defendant/Appellee - Gregory P. Bordelon

THIBODEAUX, Chief Judge.

Brenda Bordelon, the former wife of Gregory Bordelon, appeals the trial court's denial of her reimbursement requests in this property partition dispute. During their marriage, Gregory and Brenda Bordelon built a new home on Gregory's separately owned property. The couple used community funds and donated their labor in constructing the house, significantly increasing the value of the property.

In partitioning the property after their divorce in 2001, Brenda Bordelon sought reimbursement under La.Civ.Code art. 2366 for one-half of the community funds expended and under La.Civ.Code art. 2368 for one-half of the enhanced value of the property. After a bench trial, the trial court denied Brenda Bordelon's requests for reimbursement.

We conclude that the trial court erred in failing to reimburse Brenda Bordelon one-half of the community construction funds under La.Civ.Code art. 2366 and in failing to reimburse her one-half of the enhanced value of the property under La.Civ.Code art. 2368, subject to offsets for the funds expended and the balance due on the community debt. Accordingly, we reverse the judgment of the trial court and render specific awards for reimbursements as fully set forth below.

I.

## ISSUES

We must decide:

(1)  whether the trial court erred in failing to award Brenda Bordelon one-half of the community funds expended on the separate property of Gregory P. Bordelon pursuant to La.Civ.Code art. 2366;  and

(2)  whether the trial court erred in failing to award Brenda Bordelon one-half of the increase to the value of the separate property of Gregory P. Bordelon pursuant to La.Civ.Code art. 2368.

## II.

## FACTS AND PROCEDURAL HISTORY

At the time of the marriage in 1983, Gregory Bordelon owned a lot which was his separate property. The lot contained two buildings, a shop and a storage building, that are also Gregory's separate property.

In 1989, the couple built a house on the lot and subsequently lived in it with their children as the family residence. This home is the subject of the current dispute. During the construction of the home, Gregory, who was a carpenter, provided most of the labor in constructing the house, along with the couple's friends and family members who donated their time and assistance. Brenda cooked meals for the builders, organized and cleaned up the construction site, purchased materials and supplies, kept the financial records, paid the bills for the construction, and raised the children of the marriage. The house was built in approximately three months. Labor was performed in the days and evenings and on weekends. During this time, Gregory maintained his employment with Tomassi Construction. Brenda did not work outside the home at that time.

Most of the labor on the home was donated except for checks written to individuals for laying bricks and flooring and for finishing sheetrock, for a total of $2,940.50. Brenda wrote checks to cash and to Gregory, indicating some hourly work; she did not write checks to herself for hourly work. Notwithstanding the description on the checks as hourly work, the parties specifically stipulated that these checks were part of the $38,000.00 used to buy materials and goods to build the house. All of the construction costs were paid from community funds obtained from the proceeds of a community loan. The family lived in and maintained the home for eleven or twelve years after its construction.

At the time of the final divorce in September 2001 the parties entered into a partial settlement wherein the furniture was distributed, and each party accepted a vehicle and its attendant debt. The only asset in dispute is the house, and the only debt in dispute is the construction loan for the house.

The parties have stipulated that (1) the lot on which the house was built is Gregory's separate property; (2) the value of the materials to construct the house was $38,000.00; (3) the lot, two buildings, and the home constructed during the marriage are Gregory's separate property; and (4) a community loan was taken out by both parties in February 1989 for $41,440.00, from which the construction materials were purchased. The remainder of the loan was used to buy furnishings.

Brenda sought reimbursement for one-half of the $38,000.00 in community funds expended in the construction of the house under La.Civ.Code art. 2366, which is $19,000.00. Brenda, asserting that the house has a value of $115,000.00, also sought reimbursement under La.Civ.Code art. 2368 for one-half of the enhanced value of the property due to the construction of the house, which is $57,500.00. She seeks the total of $19,000.00 plus $57,500.00, or $76,500.00.

After the trial of this matter, the trial court rendered a judgment against Brenda, awarding her nothing. The court declined to address La.Civ.Code art. 2366 and specifically held that Brenda Bordelon was not entitled to one-half of the increased value of the property under La.Civ.Code art. 2368. It is from this judgment that Brenda appeals.

III.

## LAW AND DISCUSSION

### Standard of Review

The Louisiana Supreme Court has articulated the standard of review for

findings of law and fact as follows:

> An appellate court should not set aside the factual findings of a trial court absent manifest error or unless clearly wrong. *Arceneaux v. Domin[]gue*, 365 So.2d 1330 (La.1978). However, if a court finds that the trial court committed a reversible error of law or manifest error of fact, the court of appeal must ascertain the facts *de novo* from the record and render a judgment on the merits. *LeBlanc v. Stevenson*, 00-0157 (La. 10/17/00), 770 So.2d 766. Although appellate courts should accord deference to the fact-finder, they nonetheless have a constitutional duty to review facts. *Ambrose v. New Orleans Police Dept. Ambulance Service*, 93-3099 (La. 7/5/94), 639 So.2d 216, 221. Because appellate courts must perform this constitutional function, they have every right to determine whether the trial court verdict was clearly wrong based on the evidence or clearly without evidentiary support. *Id*. The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Stobart v. State through Dept. of Transp. & Development*, 617 So.2d 880, 882 (La. 4/12/93).

*Oubre v. Eslaih*, 03-1133, pp. 8-9 (La. 2/6/04), 869 So.2d 71, 76-77.

### Reimbursement under La.Civ.Code art. 2366

Brenda contends that the trial court erred in failing to reimburse her one-

half of the $38,000.00 in community funds expended on the construction of the home

on the separate property of Gregory Bordelon pursuant to La.Civ.Code art. 2366.

That article provides as follows:

> **Art. 2366. Use of community property for the benefit of separate property**

4

> If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used.
>
> Buildings, other constructions permanently attached to the ground, and plantings made on the separate property of a spouse with community assets belong to the owner of the ground. Upon termination of the community, the other spouse is entitled to one-half of the amount or value that the community assets had at the time they were used.

Accordingly, La.Civ.Code art. 2366 provides in paragraph two that constructions permanently attached to the ground on the separate property of a spouse, even if constructed with community assets, belong to the owner of the ground. In this case, there is no dispute, and the parties stipulated to the fact, that the lot and buildings, including the house constructed on the lot during the marriage, are the separate property of Gregory Bordelon. However, Article 2366 also provides that where community property or community funds have been used to improve or benefit the separate property of the owner spouse, the non-owner spouse is entitled, upon termination of the community, to one-half of the improvement costs. In this case, the parties stipulated that the community funds used to buy materials and construct the house had a value of $38,000.00. Therefore, the amount sought by Brenda Bordelon under Article 2366 is one-half of the $38,000.00 in community funds expended, which is $19,000.00.

In *Brehm v. Brehm*, 00-201 (La.App. 5 Cir. 6/27/00), 762 So.2d 1259, *writ denied,* 00-2286 (La. 10/27/00), 772 So.2d 657, the marital domicile was built with community funds on Mr. Brehm's separate property during Mr. and Mrs. Brehm's marriage. The cost of building the house was $23,588.93. Under La.Civ.Code art. 2366, Mrs. Brehm was awarded $11,794.47, which was one-half of

5

the initial construction costs of building the house. Similarly, in the present case, Brenda is entitled to reimbursement under La.Civ.Code art. 2366 of $19,000.00, which is one-half of the $38,000.00 in construction funds used to build the house.

While the trial court did not address reimbursement under Article 2366, Gregory admits that he owes Brenda $19,000.00 under this article. However, Gregory contends that the $19,000.00 that he owes Brenda is cancelled out by the total amount of reimbursements that she owes him. We will address each of his assertions regarding the offsets.

The first involves the construction loan. The parties stipulated that the construction loan of $41,400.00, which supplied the construction funds of $38,000.00, was a community obligation. Accordingly, Gregory asserts that Brenda owes him one-half of the balance due on the community loan, which he also asserts was paid down to $22,913.32. Therefore, Gregory argues that Brenda owes him $11,456.66 on the loan. In this case, the parties stipulated that the construction loan was a community debt even though it was largely applied to Gregory's separate property. Therefore, the debt is subject to partition, and in the final calculations Brenda will be obligated to reimburse Gregory $11,456.66 for one-half of the principal balance of the loan, which is the only community debt at issue herein. However, in order to simplify matters, we will not apply the offset for this community liability until we have determined the total amount of community assets at issue.

Gregory also contends that under La.Civ.Code art. 2365 Brenda owes him reimbursement of one-half of the $17,547.20 in mortgage payments that he made on the loan after she moved out[1] of the house, which comes to $8,773.60. According

---

[1] Brenda was awarded use of the home in the 2001 partial settlement wherein the parties agreed that she and the children would occupy the home until the last child graduated from high school, around 2006. The settlement provided that Brenda would pay the notes on the house but that they would be considered rent and that she would waive any claim to reimbursement for the notes paid. Brenda subsequently moved out of the home earlier than agreed upon; Gregory moved in and

6

to Gregory's calculations, this brings Brenda's indebtedness to $20,230.26, which cancels out the $19,000.00 that he owes her under Article 2366.

We disagree. Gregory is not entitled to reimbursement under La.Civ.Code art. 2365 for one-half of the mortgage payments that he made on the community obligation from his separate funds *after* the divorce. That article provides as follows:

> **Art. 2365. Satisfaction of community obligation with separate property**
>
> If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
>
> Nevertheless, if the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community, the spouse is entitled to reimbursement from the other spouse regardless of the value of that spouse's share of the community.

Gregory began making mortgage payments in February 2002, *after* the community regime ended in 2001. Therefore, he made mortgage payments on a stipulated community debt on an asset in his possession with his own separate funds. We have held that "the reimbursement scheme contemplated by La.Civ.Code art. 2365 pertains solely to debts paid *during* the marriage, and *not* those paid *after* divorce." *Sheridon v. Sheridon*, 03-103, p. 7 (La.App. 3 Cir. 2/4/04), 867 So.2d 38, 44 (*en banc*) (emphasis added). More specifically, in *Sheridon*, where the divorce

---

began paying the notes on the mortgage in February 2002.

7

suit was filed in October 1999 and the last day of trial was in November 2001, this

court articulated as follows:

> Mr. Sheridon asserts that the trial court erred in requiring him to reimburse Ms. Sheridon $4,110.25, representing one half of the amounts she paid between October 5, 1999, and November 15, 2001, on the note executed to finance the purchase of the Pontiac Firebird. In asserting this argument, he relies on this court's decisions in *Bergeron v. Bergeron*, 96-1586 (La.App. 3 Cir. 4/9/97), 693 So.2d 199, and *Preis v. Preis*, 94-442 (La.App. 3 Cir. 11/2/94), 649 So.2d 593, *writs denied*, 94-2939, 94-2942 (La. 1/27/95), 649 So.2d 392.
>
> In *Preis*, we cited jurisprudence from the other circuits to conclude that "a spouse who has the exclusive use of an automobile following the termination of the community, is not entitled to reimbursement or credit for notes paid on it." *Preis v. Preis*, 649 So.2d at 596. *Bergeron* reached the same conclusion.
>
> However, another panel of this court, in *Nash v. Nash*, 01-766 (La.App. 3 Cir. 10/31/01), 799 So.2d 829, *writ denied*, 01-3154 (La. 2/1/02), 808 So.2d 344, concluded that La.Civ.Code art. 2365 governed the reimbursement issue, and declined to follow this court's holdings in *Preis* and *Bergeron*. The issue is now before us *en banc* to resolve the split within this circuit on this issue. In addressing this issue, we reaffirm our decisions in *Preis* and *Bergeron*.
>
> Louisiana Civil Code Article 2365 provides:
>
>> If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. . . .
>
> The phrase "upon termination of the community property regime" is crucial to our interpretation of La.Civ.Code art. 2365. The Article does not say "upon partition," but specifically uses the words "upon termination." Because of the specific language used, it is clear that the reimbursement scheme contemplated by La.Civ.Code art. 2365 pertains *solely to debts paid during the marriage, and not those paid after divorce*. Thus, Ms.

> Sheridon would be entitled, under La.Civ.Code art. 2365, to reimbursement for community debts she paid with separate funds *before termination of the marriage.* As such, La.Civ.Code art. 2365 is not applicable to the matter before us, and we specifically overrule this holding in *Nash*.

*Id*. at 44 (emphasis added).

Based upon the foregoing, Brenda does *not* owe Gregory reimbursement under La.Civ.Code art. 2365 for one-half of the $17,547.20 (or $8,773.60) in mortgage payments that Gregory made on the construction loan in 2002 *after* the termination of the marriage in 2001.

Therefore, Brenda does not owe greater reimbursements to Gregory than the $19,000.00 reimbursement that he owes her under La.Civ.Code art. 2366. We reverse the trial court's decision to omit adjudication of the parties' respective obligations regarding both the community debt and the reimbursement under Article 2366. We now turn to the issue of whether the improvement to Gregory's property is subject to partition as a community asset under La.Civ.Code art. 2368.

**Reimbursements under La.Civ.Code art. 2368**

Brenda contends that the trial court erred in failing to reimburse her one-half of the value of the improvement to Gregory's property resulting from the construction of the house, pursuant to La.Civ.Code art. 2368. We agree that an award should be made under Article 2368, but we do not agree with Brenda's calculations. More specifically, the article provides as follows:

**Art. 2368. Increase of the value of separate property**

> If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor.

(Emphasis added).

To prevail on a claim under Article 2368, the claimant spouse must prove: (1) that the improved property is separate; (2) that the property increased in value during the existence of the matrimonial regime; (3) that common or community labor of the spouses was expended on the separate property; and (4) that the common labor expended was uncompensated or undercompensated. If established, the burden shifts to the owner of the separate property to prove that some or all of the enhancement in value occurred because of factors other than the uncompensated or undercompensated community labor. The claimant spouse does not have to show that his or her labor was expended on separate property. It is enough to show that the labor of *either* spouse was so expended. *Salley v. Salley*, 95-0387 (La. 10/16/95), 661 So.2d 437.

Moreover, once the claimant seeking reimbursement has established that the increase in the separate property of the other spouse is entirely or partially due to under- or uncompensated community labor of the other spouse, the claimant is entitled to one-half of the enhanced value of the separate property, even if that value *exceeds* the value of the uncompensated labor. *Krielow v. Krielow*, 93-2539 (La. 4/11/94), 635 So.2d 180.

The rationale underlying Article 2368 is that:

> Because property acquired by the effort, skill or industry of a spouse is community, to the extent that a spouse's labor is producing some benefit, the community ought to share in the profit of that labor. Thus, in the case where a spouse's labor increases the value of a separate asset, the equitable solution is reimbursement for that effort by awarding the non-owner spouse one-half of the increase attributable to the common labor. La. C.C. art. 2368. If the labor is combined with separate capital or other separate property, equity would suggest a proportional division of the profits between the community and separate estates of the spouses. Katherine S. Spaht & W. Lee Hargrave,

10

*Louisiana Civil Law Treatise, Matrimonial Regimes*, Vol. 16, § 3.8 & 3.49 (2d ed.1997).

*McClanahan v. McClanahan*, 03-1178 (La.App. 5 Cir. 2/23/04), 868 So.2d 844, 848, *writ denied*, 04-1175 (La. 9/3/04), 882 So.2d 609.

With regard to the labors of the owner-spouse, it is further reasoned that "[a] spouse should not be permitted to deprive the community of a spouse's earnings that would be community property when that community labor enhances or increases the value of the laboring spouse's separately owned property." *Krielow*, 635 So.2d at 183.

In the present case, the parties stipulated that the property at issue is the separate property of Gregory. Therefore, the first criterion is met. Likewise, there is no dispute that the property increased in value during the marriage due to the construction of the home. Accordingly, the second criterion is met.

The third criterion that Brenda must prove is that the community labor of either spouse was expended on the separate property. The testimony at trial reflects that Gregory was an excellent carpenter and an all-around skilled builder and that he provided labor on the home in numerous capacities, including hanging the sheetrock. The record also contains testimony that he worked on the house every day for three months, often working alone and often until ten or twelve o'clock at night. The record also reflects that Brenda contributed her labor by purchasing supplies; maintaining the financial records; paying the construction bills; organizing, cleaning and sweeping the construction site; cooking meals for the helpers; and raising the children of the community during the construction. Clearly, both spouses contributed their labor in the construction of the home.

The final criterion that Brenda must prove under *Salley*, 661 So.2d 437, is that the common labor expended was uncompensated or undercompensated. At

trial, Gregory testified that he never received money and was not paid for the work he performed on the home. Likewise, there is no allegation or proof that Brenda was compensated for her labor on Gregory's separate property. There are checks written between April and July 1989 on the community construction account made payable to "cash" for hourly work in the total amount of $3,000.00 and checks made to Gregory for hourly work in the total amount of $3,743.00. Brenda testified that she wrote the checks on the construction account and deposited them to their joint personal account for the family to live on during the construction period. However, these checks came from the community loan and are part of the $38,000.00 that the parties stipulated to as costs for construction materials. This $38,000.00 has been covered in the previous section of this analysis as community *funds* used to enhance the separate property of Gregory.

As to labor belonging to the community, Gregory argues that he did not deprive the community of his paid labor during the building of the private home because he maintained regular employment with Tomassi Construction during that period. The record contains checks paid to Gregory by a homeowner for outside labor with Tomassi Construction during the same time period that he was working on his own property. At trial, he admitted that those checks did not reflect forty hours per week every week. In fact, there was only one check for $315.00 in May of 1989. Mr. Tomassi testified that Gregory guaranteed him forty hours per week during that construction period in 1989 and indicated that Gregory maintained full-time employment with him. However, Mr. Tomassi did not have records from 1989 and testified that he destroyed his records after seven years due to the volume.

Hence, the record supports Brenda's contention that the house was built with community funds *and* with the labor of both spouses that was uncompensated

12

to some degree. Accordingly, the final criterion in Brenda's burden of proof is met under *Salley*, 661 So.2d 437.

The burden shifted to Gregory to prove that some or all of the enhancement in value occurred because of factors other than the uncompensated or undercompensated community labor. As a threshold matter, it is simply untenable to imply that the large majority of the value of Gregory's property is not due to the construction of the house. The appraisal in the record values the land and small buildings at $40,000.000 and the house constructed during the marriage at $115,000.00. Gregory argues that there is absolutely no reimbursement due under Article 2368 because the enhanced value occurred due to other factors, not because of uncompensated community labor but because of the donated labor of friends and family and contractors paid for their work. The record does not support such a contention. Only six checks were written to contractors totaling $2,940.50 for cement floor finishing, bricklaying and sheetrock floating. The record further reveals that, while friends and family members of the couple assisted Gregory in the building of the home, Gregory did the majority of the actual construction work on the home. The only amount paid to contractors was $2,940.50.

Gregory further argues that the value of the labor on the house at the time that it was built was equal only to the cost of the materials, giving the house a total value of $76,000.00 in 1989, and that the more recent appraisal of $115,000.00 was due to a market phenomenon. However, Gregory overlooks the fact that the family lived in the house for eleven or twelve years after it was built, and it was the community labor of both spouses that maintained the home during that period. Morever, we note that Brenda lived in the house and maintained it for another year after the marital regime ended. If left to sit dormant, a house will not maintain its

13

value. If the house had been abandoned after completion in 1989 it would likely not be worth the materials used to build it. Nature has a way of reclaiming man's abandoned constructions. But for the continuing labor of the spouses, the house would have little value indeed. The photographs accompanying the appraisal depict a lovely brick-front home, which we find is the result mostly of the under- or uncompensated labor of both spouses.

In *Krielow*, 635 So.2d 180, Lynn Krielow established under La.Civ.Code art. 2368 that Carl Krielow's undercompensated community labor for his separate corporation enhanced or increased his separately owned stock. The burden shifted to Carl, as the owner of the separate property, to prove that some or all of the enhancement occurred because of other factors. Carl failed to meet his burden of proof, and the court remanded the case to the trial court for a determination of the amount of reimbursement to Lynn Krielow. In that case, Carl worked solely for his own corporation, and he was paid in draws found to be relatively low. Once it was determined that he was undercompensated for his labor, the supreme court articulated that Lynn Krielow was entitled to one-half of the enhanced value of the corporate stock, even if that value exceeded the value of the uncompensated labor. The court stated that Article 2368 did not impose limitations on recovery and that the claimant is "entitled to recover the greater amount." *Krielow*, 635 So.2d at 185.

The value of assets are determined at the time of trial. La.R.S. 9:2801. The trial of this matter was held on June 17, 2005. The date on the appraisal is May 23, 2005. Accordingly, we find that the value of the improvement to Gregory's separate property due to the construction of the house is $115,000.00. Brenda is entitled to one-half of that amount *attributable to common or community labor* under La.Civ.Code art. 2368. Now we turn to calculating Brenda's total recovery.

14

**Calculations, Offsets, and Deductions**

In calculating her reimbursements, Brenda cites *Loyacono v. Loyacono*, 618 So.2d 896 (La.App. 5 Cir. 1993), and asserts that she is entitled to the full amount of two separate reimbursements, one under Article 2366, and one under Article 2368. More specifically, Brenda contends that she is entitled to one-half of the $38,000.00 ($19,000.00) expended in community construction costs under La.Civ.Code art. 2366, plus one-half of the $115,000.00 ($57,500.00) enhancement value under La.Civ.Code art. 2368, for a total of $76,500.00. However, she overlooks the fact that the community construction funds *plus* the community labor *combined* to render an increased value of $115,000.00. Article 2368 provides for reimbursement, not of one-half the total enhancement value, but for "one-half of the increase attributed to the common labor." La.Civ.Code art. 2368. The labor itself is not worth $115,000.00.

In order to determine the value of the community labor, we would subtract the community funds from the total enhancement. Accordingly, $115,000.00 minus $38,000.00 equals $77,000.00, which represents the value of the community labor expended under Article 2368. The value of the labor of $77,000.00 is then subject to division and reimbursement to the claimant spouse of one-half that amount, or $38,500.00, under Article 2368. To this amount is added one-half of the construction funds of $38,000.00, or $19,000.00, under Article 2366. The sum of $19,000.00 in funds under Article 2366 plus $38,500.00 in labor under Article 2368 equals $57,500.00. Accordingly, Brenda's total recovery of community funds and community labor under both articles is $57,500.00.

See also *McKey v. McKey*, 449 So.2d 564 (La.App. 1 Cir. 1984), where in a footnote the court articulated the formula as follows:

15

> (FN 6.) Where both community improvements to separate property and enhancement of value by "uncompensated common labor and industry" are involved, as here, a formula must be devised to prevent the claiming spouse from reaping double benefit for the expenses. Although we do not reach this issue because of our conclusion here, a fair method of resolving the matter would be to determine the enhanced value . . . . [t]hen determine the value of the improvements placed on the separate property and subtract that amount from the enhanced value before dividing enhanced value.

*Id*. at 567, n.6.

Accordingly, while Brenda is entitled to recovery under Articles 2366 *and* 2368, the construction funds are *part of* the enhanced value, and recovery under both cannot simply be stacked. To award construction costs *plus* the full enhancement value, without an offset, would be to award the construction costs twice. In effect, it must be stated that when funds and labor are expended on the same piece of property resulting in an enhancement to the value of that property, recovery under Article 2368 is *subject to* a credit or offset for the recovery awarded under Article 2366.

In *Loyacono,* during the marriage of the spouses, the husband purchased a house from his parents designated as his separate property purchased with his separate funds. He assumed the loan on the separate property, which the court subsequently designated as his separate loan. During the marriage, the couple and their two children lived in the house as their primary residence. The community made improvements to the house, and the community paid notes on the house. The house increased in value. In partitioning the community after the divorce, the court ordered reimbursement to the wife under La.Civ.Code art. 2366 for one-half of the cost of the improvements made with community funds. The court also reimbursed the wife

16

under La.Civ.Code art. 2364[2] for one-half of the community mortgage payments attributable to reduction of the principle on the separate loan. Finally, finding that the increase in the value of the house was the result of community labor, the court reimbursed the wife "one-half of the enhanced value of the separate property, *subject to a credit for the improvements.*" *Loyacono*, 618 So.2d at 899 (emphasis added).

By analogy, Brenda is not entitled to, nor has she requested, reimbursement for the community mortgage payments made during the marriage under La.Civ.Code art. 2364 because the parties stipulated that the loan was a community obligation, not a separate obligation as found in *Loyacono*. Otherwise, the findings in *Loyacono* apply in the present case and provide another way of calculating the recovery with the same result. As previously indicated, Brenda is entitled to reimbursement of $19,000.00 under La.Civ.Code art. 2366 for one-half of the value of the community funds of $38,000.00 used in the improvement to the separate property by construction of the house.

Additionally, under La.Civ.Code art. 2368, she is entitled to reimbursement of $57,500.00 for one-half of the property's enhancement value of $115,000.00, *subject to a credit or an offset for the improvements*, pursuant to *Loyacono*. Accordingly, $19,000.00 plus $57,500.00 minus $19,000.00 equals $57,500.00.

Under either scenario, Brenda's total reimbursements under Articles 2366 and 2368 come to $57,500.00. However, this is not the amount of her net recovery. Brenda has also omitted from her calculations the amount due on the

---

[2]**Art. 2364. Satisfaction of separate obligation with community property**

If community property has been used to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement upon termination of the community property regime for one-half of the amount or value that the property had at the time it was used.

community loan. As previously indicated, from her total reimbursements of $57,500.00 Brenda Bordelon must reimburse Gregory Bordelon $11,456.66 for her one-half of the community debt of $22,913.32. Thus, $57,500.00 minus $11,456.66 equals $46,043.34. Accordingly, the amount of the net reimbursement due to be paid to Brenda Bordelon by Gregory Bordelon is $46,043.34.

IV.

## **CONCLUSION**

Based upon the foregoing, the judgment of the trial court is reversed, and Gregory Bordelon is hereby ordered to pay Brenda Bordelon the amount of $46,043.34 in total net reimbursements due to the community's expenditures of funds and labor on Gregory's separate property. The costs of filing this appeal are assessed against Gregory P. Bordelon.

**REVERSED AND RENDERED.**

**BRENDA BORDELON**

**VERSUS**

**GREGORY D. BORDELON**

Painter, Judge dissenting.

While I agree with the majority's opinion herein that Mrs. Bordelon is due a reimbursement in connection with the construction of the family home, I disagree with regard to the amount of that reimbursement.

Louisiana Civil Code art. 2368 states:

If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor.

The court in *Brehm v. Brehm*, 00-201, p. 4 (La.App. 5 Cir. 6/27/00), 762 So.2d 1259, 1263, *writ denied*, 00-2286 (La. 10/27/00), 772 So.2d 657, explained the statute as follows:

A claimant spouse under LSA-C.C. art. 2368 has the burden of proving: (1) the property is separate, (2) the property increased in value, and (3) the increase in value was based on the uncompensated or undercompensated labor of the other spouse; the burden then shifts to the other spouse to prove that the increase in value was due to factors other than the uncompensated or undercompensated labor. *Salley v. Salley*, 95-0387 (La.10/16/95), 661 So.2d 437, 438; *Krielow v. Krielow*, 93-2539 (La.4/11/94), 635 So.2d 180, 183.

The evidence at trial, however, was that Mr. Bordelon was compensated for his labor on the house. Therefore, La.Civ.Code art. 2368 does not apply. At trial, Mrs. Bordelon testified that Mr. Bordelon had been paid for his labor. Checks in the amount of $6,743.00, made out to Mr. Bordelon or to Cash, and bearing notations that

they were payment for labor on the house were introduced into evidence. While Mr. Bordelon testified that he was not paid, Mrs. Bordelon had the burden of showing that the labor was uncompensated. Therefore, the admission should be held against her rather than him. In the absence of uncompensated labor, I would find that Mrs. Bordelon is entitled only to reimbursement of one-half the amount used in improving Mr. Bordelon's separate property, that is one-half of $38,000.00, as provided by La.Civ.Code art. 2366: "If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used."

For these reasons, I respectfully dissent from the majority herein.