741 So.2d 670 (1999)
Dora Ellen KLINE, Plaintiff-Appellant,
v.
Kenneth Michael KLINE, Defendant-Appellee.
No. 98-1206
Court of Appeal of Louisiana, Third Circuit.
February 10, 1999.
*671 Kenneth Michael Wright, Lake Charles, for Dora Ellen Kline.
Randall E. Hart, Lake Charles, for Kenneth Michael Kline.
BEFORE: COOKS, SAUNDERS, AND GREMILLION, JJ.
SAUNDERS, J.
This matter arises from a 1985 separation and, finally, a 1987 divorce of Dora Ellen Kline (hereinafter "Dora") and Kenneth Michael Kline (hereinafter "Mike"). Dora occupied their home after the separation, as awarded by the trial court, but abandoned it in 1987, after the divorce was final. Mike, pursuant to only a verbal understanding between he and Dora, and in the absence of a court order, occupied the home until 1997. Mike rented the home out for the first half of 1997 and then finally sold it for $119,000.00 on August 14, 1997. At trial, Mike sought reimbursement for one-half of his expenditures, for one-half of the mortgage payments he made with his separate property, and for one-half the enhancement value of the property. Dora sought rental reimbursements from Mike for the nine years he occupied the home. The lower court ruled in favor of Mike, granting reimbursements for his expenditures, enhancements, and his mortgage payments, and denying rental payments to Dora. The trial court did, however, deny Mike's claim of reimbursement for real estate taxes and insurance expenses, and found a $5,000.00 loan in the couple's favor prescribed. We affirm and remand.

FACTS
Dora and Mike were married on March 14, 1977. Mike had a small home building business and financed the construction of their family home through Mike's mother, Glyn Ann Kline (Ann). On March 11, 1982, they signed a mortgage in favor of Ann for $41,542.00. On the same date, Dora and Mike also signed a promissory note in the amount of $6,542.00 and a promissory note in the amount of $41,542.00. Ann transferred money into the couple's account as money was needed. Dora and Mike ultimately borrowed an additional unsecured $5,000.00 from Ann to make the house habitable.
In November 1985, Dora filed a petition for separation at which time she was awarded the exclusive occupancy of the home and Mike was ordered to pay the mortgage and insurance on the home as part of his support obligation. At the time of the separation, the house was still very much unfinished. A Judgment of Divorce was rendered on October 8, 1987; Mike was subsequently ordered to pay child support and permanent alimony.
When Dora gained occupancy of the home, she charged the purchase and installation of carpeting at Sears. Mike was ordered by the court to pay this bill. She continued to live in the former marital domicile, located at 1329 Lawton Drive, in Sulphur, Louisiana, until November 1987 when she abandoned the property. Upon her abandonment, no formal agreement was reached between the parties regarding the house. However, pursuant to a verbal agreement between the parties, Mike moved back into the home and resided there for the next nine years until August 16, 1996. During Mike's occupancy, he made extensive repairs made necessary due to Dora's neglect; he essentially finished the home, adding a pool, concrete driveway, new sewer system, a new heat pump, landscaping, and much more as indicated by the record. Mike rented the home from January 1997 through July of that same year and finally sold the home on August 14, 1997, for $119,000.00.
A Petition for Partition and Accounting and a Sworn Descriptive List was filed by Dora on November 8, 1988. Mike filed his initial descriptive list in November of 1995 *672 and later filed two supplemental and amending lists. He also raised a claim for reimbursement to his separate estate for expenses on the former community residence and later, through an amending pleading, added additional costs for repair of the home. In response, Dora filed a Rule to Determine Rental Reimbursement pursuant to La.R.S. 9:374.
At trial, Mike sought reimbursement for one-half of his separate property expenditures servicing the community construction loan and reimbursement for one-half of expenses he incurred improving the home. The lower court found that Dora owed Mike reimbursement for one-half of his separate property that Mike paid on the mortgage and that he was entitled to reimbursement for one-half of the enhanced value of the property attributable to improvements that he made. The trial court also found that the $5,000.00 portion of the construction loan not secured by the mortgage had prescribed and denied Mike's reimbursement claims for real estate taxes and insurance.

I. ASSIGNMENT OF ERROR NO. 1

A. Standard of Review
The first assignment of error Dora asserts challenges the sufficiency of evidence presented at trial to establish the legitimacy of Mike's reimbursement claims. This is clearly a question of fact, not law. The seminal case of Arceneaux v. Domingue, 365 So.2d 1330, (La.1978), clarifies Louisiana's Constitutional mandate under Article 5 § 10(B) which extends the scope of appellate review to "law and facts." Arceneaux explains that a reviewing court must search for more than just a reasonable factual basis for a lower court's finding; the reviewer must actively determine that a factual finding was reached in the absence of manifest error. Id. "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Dora cites jurisprudence in her brief in an attempt to argue that the purview of appellate review of facts with regard to a civil sufficiency of the evidence challenge must be reviewed under something other than the manifest error standard since such a challenge is a mixed question of law and fact. Dora also suggests in her brief that we use a negligence standard to determine every element of the defendant's claim. We note that for a claim of reimbursement for payment of community obligations with separate funds, the nature of the indebtedness and the community obligation(s) must be proven by a preponderance of the evidence. Krielow v. Krielow, 93-2539 (La.4/11/94); 635 So.2d 180. We refuse to follow Dora's attempt to assert a higher burden of proof and we now address her first assignment of error under the manifest error standard for the review of factual findings made at trial.

B. Reimbursement for Repairs/Maintenance
Regarding Mike's claim for reimbursement, he must prove that the work was necessary and that such work enhanced the value of the property. Jones v. Jones, 605 So.2d 689 (La.App. 2 Cir.), writ denied, 607 So.2d 571 (La.1992). Once the community of acquets and gains is dissolved by separation, the spouses become co-owners in indivision of the marital home. Bolden v. Bolden, 524 So.2d 10 (La.App. 1 Cir.1988). We find that the trial court had sufficient evidentiary support to reimburse Mike's expenses. La. Civ.Code. art. 2369.3 states, in pertinent part:
A spouse has a duty to preserve and to manage prudently former community property under his control, including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He *673 is answerable for any damage caused by his fault, default, or neglect.
The comments to Article 2369.3 explain that unlike ordinary co-owners, this article imposes a higher and affirmative duty of care for the management of former community property since the presumption that a spouse will act in the best interest of the community no longer exists. Additionally, Comment (f) recognizes the entitlement that La.Civ.Code art. 806 grants, to-wit: "[a] spouse who incurs expenses in compliance with the obligation imposed by this Article is entitled reimbursement for one-half the costs in accordance with general principles of the law of co-ownership." Article 806 provides, in pertinent part, the following:
A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.
When Dora occupied the home, this affirmative duty was imposed upon her. The record provides ample evidence, including photos and testimony from which reasonable factfinders could agree, that Dora failed to properly discharge her duty of care. Dora must answer for all damages done to the property due to her fault, default or neglect. La.Civ.Code art. 2369.3.
When Mike moved back into the home, he found that Dora had left it in a state of severe disrepair. The septic pond, which requires regular maintenance, had been neglected and was overgrown with vegetation. He found rotten wood on the exterior of the house. The lock on the front door was destroyed due to a key broken off in the lock. The door to the storeroom and the stairway to the attic had been damaged. Garage walls and cabinets had been sprayed with spray paint in different colors. Dora's dogs and cats, which were kept in the house, damaged door trims and soiled new carpet to the point that it had to be replaced. The fireplace doors were inoperable. The fireplace mantel, mini blinds, curtains, several electrical outlet cover plates and switch covers, bathroom mirrors, prismatic panels on fluorescent lights, and shelves and closet rods were missing. The door to one of the bedrooms had a hole in it and in another bedroom closet, the ceiling had a hole in it. Both the dishwasher and the oven in the kitchen were broken. Dora had also removed the air conditioner condensing unit.
Through documentation and testimony, Mike provided evidence upon which a factfinder could reasonably find that during his occupancy of the home, he repaired and replaced all items that were either damaged or removed during Dora's occupancy. He completed all unfinished construction and made extensive improvements to the home. Mike replaced the carpeting which had been destroyed by Dora's pets. He replaced the exterior lock rendered inoperable by the broken key; repainted the garage walls defaced with spray paint; replaced door trim; installed new fireplace doors; replaced the missing fireplace mantel, prismatic panels, closet rods and shelves, electrical outlet and switch cover plates, bathroom mirrors, mini blinds, and curtains, and central air conditioning condensing unit; cleaned the septic oxidation pond; replaced the rotten wood; repaired the sheetrock in the ceiling; and installed a new dishwasher and oven.
We find, after a review of the record, ample evidence upon which a factfinder might determine that Mike's extensive work not only maintained, but also prudently repaired those damages left by Dora's neglect. In addition, his further construction reasonably enhanced the value of the home as supported by the sale on August 14, 1997, for $119,000.00.

B. Rent and McCarroll
"After termination of the community property regime, the provisions governing *674 co-ownership apply to former community property, unless otherwise provided by law or by juridical act." La.Civ.Code art. 2369.1. Explaining the article, 1995 Comment (a) provides that "former community property will be governed by the general principles of co-ownership, but only if it is not otherwise provided by law or by juridical act." Dora argues that under Article 806, Mike should be charged for the rental value of the home while he occupied it. Article 806 provides in part, "[i]f the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment." However, specifically addressing the case of a spouse occupying a community home, La.R.S. 9:374(C) (formally La.R.S. 9:308(C), amended by Act 678 of the 1986 Louisiana Legislative Session) provides, in pertinent part:
A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court.
Dora attacks the use of this article and the application of McCarroll v. McCarroll, 96-2700 (La.10/21/97); 701 So.2d 1280, to the present matter as an unconstitutional abrogation of vested rights. We disagree. After a careful review of a split in the circuits, the Louisiana Supreme Court addressed this issue directly and decided: "Finding the issue now squarely before us, we hold that rental payments may not be retroactively assessed under La.R.S. 9:374(C) unless otherwise agreed by the spouses or ordered by the court." Id. at 1289. It is beyond the purview of this court to ignore the close scrutiny and rule of our superior court. As the record indicates, Dora was awarded occupancy of the home by the courtthis she abandoned once the divorce was final, and she made no formal arrangements for its care other than an informal understanding that Mike would live in it. Accordingly, we agree with the lower court's finding that Mike should not be assessed rent in the absence of an agreement for the same between he and Dora and in the absence of an order by the trial court.

C. The Mortgage
Dora argues that under McCarroll and co-ownership principles, Mike's enjoyment of the house for nine years should reduce his claims for mortgage reimbursements. We do not read McCarroll to deny Mike's claim for payments that he made on the community obligationthe mortgage. The very same argument that Dora asserts was attempted in Roque v. Tate, 631 So.2d 1385 (La.App. 1 Cir.1994). There, while the claimant acknowledged that her ex-husband was entitled to reimbursements for separate funds used to pay a community obligation, she argued, as Dora argues now, that under Article 806, his reimbursement for mortgage payments should be reduced in proportion to his enjoyment of the home. The Roque court held, and we agree, that the mortgage was a community obligation under La.Civ.Code art. 2365 and, as such, entitled the husband to one-half his separate property used to satisfy the community obligation. Contrary to what Dora asserts, the rationale of McCarroll does not alter the principles applied in Roque nor offer any new construction which would demand a different result. McCarroll used co-ownership principles to explain only why co-owners and now occupants of community property do not have to pay rent, that is in sum, that the equal and co-extensive right of possession of co-owners precludes any obligation of rent between co-owners where one is not deprived the right of occupancy from the other. The holding of the McCarroll decision does not reach the issue of community obligations as Dora would have this court believe.

*675 D. Loan/Donation/Prescription

Dora asserts that the unsecured $5,000.00 sum received by her and Mike while married was simply a donation, hence precluding her one-half liability for repayment of what would otherwise be a community obligation if deemed a loan. The record indicates that the additional money was given after an initial verbal agreement between Mike and Ann for a secured loan of $41,542.00. This loan consisted of a series of transfers from Ann to Mike. It is uncontested that these transactions were all part of that loan. Dora now argues that the additional $5,000.00 received from Ann was a donation simply because, when the initial $41,542.00 was paid off, Ann returned the mortgage note. The $5,000.00 was never secured by that mortgage and so the return of that note is irrelevant as to its cancellation. The terms of the $41,542.00 were governed through a verbal agreement; the additional $5,000.00 was also transferred pursuant to a verbal agreement. There is nothing to indicate, given the previous loan transactions, that Ann did not want the additional $5,000.00 repaid and the lack of security alone does not necessitate otherwise. We find no manifest error in the lower court's implicit finding that the $5,000.00 sum was a loan; additionally, given the piecemeal funds transfer, we find the $5,000.00 transaction to be in the nature of an open account. And so we also find no manifest error in the lower court's application of La.Civ.Code art. 3494's three-year prescriptive period to deem this action on an open account prescribed. In light of the prescribed $5,000.00 loan, we note Dora's assertion that the amortization amount for the remainder of the loan appears to consider the $5,000.00 amount. Mr. Labato, an accountant, testified at trial regarding the method and calculations used to determine the amount required to payoff the loan from Ann so as to retire the mortgage. In doing so, the $5,000.00 loan amount not secured by the mortgage was added as part of the principal amount to determine the amortization schedule. This is incorrect since the $5,000.00 loan has prescribed. On this issue, we remand for further evidentiary proceedings to determine the appropriate loan payoff amount, excluding the $5,000.00, thus determining the reimbursement due Mike.

II. ASSIGNMENT OF ERROR NO. 2
Dora's final assignment of error alleges a violation of her Constitutional right of due process when McCarroll and La. R.S. 9:374(C) were applied retroactive to the date of Mike's occupation of the home. As discussed above, the Louisiana Supreme Court has provided a clear statement of the very issue of the retroactive application of La.R.S. 9:374(C) in McCarroll, and has determined that "[p]ublic policy also weighs heavily against the retroactive award of rent under La.R.S. 9:374(C)... when the community is not partitioned for many years, the retroactive assessment of rent is extremely prejudicial to the occupying spouse." McCarroll, 701 So.2d at 1290. In the absence of an agreement or court order, there can be no constitutional violation where Dora's right to collect rent never vested. Accordingly, we find McCarroll and La.R.S. 9:374(C) properly applied in the present matter.

III. CROSS APPEAL

A. Prescription
On cross appeal, Mike asserts error in the lower court's finding prescribed the final $5,000.00 borrowed from Ann. As discussed above, we find no manifest error in the trial court's judgment; however, we remand for recalculation of the payoff amount.

B. Real Estate Taxes and Insurance
Mike challenges the lower court's rule denying him reimbursement for taxes and insurance paid. We agree with the lower court in finding his value of enjoyment of the home for nine years, under La.Civ. Code art. 806, amply compensates these *676 expenses. We find no manifest error in denying Mike reimbursement for these expenses.

CONCLUSION
A review of the record reveals no manifest errors of the factual findings, nor errors of law, made by the lower court. We affirm Mike's award of reimbursement for his mortgage payments and for one-half the enhancement value of the property attributable to improvements he made. We affirm the trial court's finding that the $5,000.00 loan prescribed, the denial of rental reimbursements to Dora, and the denial of Mike's reimbursement claims for taxes and insurance. We remand for recalculation of the payoff amount.

DECREE
In light of the foregoing, we affirm the trial court's judgment, remanding only for recalculation of the amortization schedule. Costs to be paid by appellant.
AFFIRMED AND REMANDED.