# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 03-103

**DIANE M. SHERIDON**

**VERSUS**

**JONATHAN SHERIDON**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 99-6303
HONORABLE LILYNN A. CUTRER, DISTRICT JUDGE

**********

**JIMMIE C. PETERS
JUDGE**

**********

BEFORE THE COURT EN BANC: Chief Judge Ulysses Gene Thibodeaux, Sylvia R. Cooks, John D. Saunders, Billie Colombaro Woodard, Oswald A. Decuir, Jimmie C. Peters, Marc T. Amy, Michael G. Sullivan, Glenn B. Gremillion, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

**Cooks, J., dissents in part, concurs in part, and assigns written reasons.
Woodard, J., dissents in part, concurs in part, and assigns written reasons.
Amy, J., dissents in part, concurs in part, and assigns written reasons.**

**W. Mitchell Redd
940 Ryan Street
Lake Charles, Louisiana 70601
(337) 433-8529
Counsel for Plaintiff /Appellee:
    Diane Sheridon**

**William J. Cutrera
910 Ford Street
Lake Charles, Louisiana 70601
(337) 433-1414
Counsel for Defendant/Appellant:
    Jonathan Sheridon**

PETERS, J.

This appeal arises from a trial court judgment partitioning the community of acquets and gains formerly existing between Jonathan Sheridon and Diane Sheridon. Mr. Sheridon appeals certain aspects of the judgment. We chose to consider this appeal *en banc* to resolve a conflict between panels of this court involving one of the issues raised in this appeal. For the following reasons, we affirm in part, reverse in part, and render judgment on those issues reversed.

Jonathan Sheridon and Diane Sheridon were married on August 14, 1987. Ms. Sheridon filed a petition for divorce and for partition of the community of acquets and gains on October 5, 1999. The couple was divorced by judicial decree on August 31, 2000. A four-day trial concerning the community property partition issues was held on August 27, 2001, August 28, 2001, October 12, 2001, and November 15, 2001. The trial court then took the matter under advisement, and on August 16, 2002, issued written reasons for its judgment on the issues raised by the partition litigation. After assigning the various assets and liabilities to the individual parties, the trial court reconciled the assignments by ordering that Ms. Sheridon pay Mr. Sheridon an equalizing payment of $14,829.38 within six months of August 15, 2002, subject to adjustment for certain payments which may have been made by Ms. Sheridon between November 15, 2001, and August 16, 2002. The trial court signed a judgment conforming with its reasons for judgment on October 18, 2002. Mr. Sheridon timely perfected this appeal, asserting thirteen assignments of error.

### Assignment of Error Number One

The community property regime at issue terminated on October 5, 1999, the day Ms. Sheridon filed for divorce. *See* La.Civ.Code art. 159. From that day through the day of trial, Ms. Sheridon had the use and occupancy of the family home and its

contents. During that period, she made monthly payments to the holder of the mortgage on the family home. These payments totaled $14,664.44. In its judgment, the trial court awarded Ms. Sheridon ownership of the family home, assigned her the remaining mortgage indebtedness,[1] ordered Mr. Sheridon to reimburse her $7,332.22, representing one half of the amount paid to the mortgage lender between October 5, 1999, and November 15, 2001, and further ordered him to reimburse her one half of the amounts that she may have paid on the mortgage indebtedness for the period from November 15, 2001, through August 15, 2002.

From October 5, 1999, through November 15, 2001, Ms. Sheridon also maintained the use and possession of a community automobile, a 1999 Pontiac Firebird. During that time period, she made $8,220.51 in payments to the lender that financed the purchase of the vehicle. In the partition judgment, the trial court awarded Ms. Sheridon ownership of the vehicle, assigned her the balance due on the finance agreement;[2] ordered that Mr. Sheridon reimburse her $4,110.25, representing one half of the payments she made to the lender between October 5, 1999, and November 15, 2001; and further ordered him to reimburse her one half of the amounts the she may have paid to the lender for the period from November 15, 2001, through August 15, 2002.

At issue in this assignment of error is the trial court's reimbursement award for payments that may have been made by Ms. Sheridon between November 15, 2001, the last day of trial, and August 15, 2002, the date the trial court rendered its written reasons for judgment. Mr. Sheridon asserts that these post-trial awards violate the provisions of La.R.S. 9:2801(A)(4)(a), which requires that, in effecting a judicial

---

[1]The judgment established the remaining indebtedness at $106,472.86 as of the time of trial.

[2]The judgment established the remaining indebtedness at $1,850.54 as of the time of trial.

partition, "[t]he court shall value the assets *as of the time of trial on the merits*, determine the liabilities, and adjudicate the claims of the parties." (Emphasis added.) Ms. Sheridon argues that the holding in *Freeman v. Freeman*, 552 So.2d 636 (La. App. 2 Cir. 1989), gives the trial court wide discretion in awarding reimbursement to a litigant after trial, but before judgment.

We note that while the second circuit in *Freeman* did affirm a reimbursement award for expenditures between trial and rendition of judgment, the litigation was a complex and confusing property partition, and the second circuit chose not to address the issue directly. Instead, it simply stated that it was "*not prepared* to hold this was an abuse of the trial court's wide latitude in directing a fair distribution under LSA-R.S. 9:2801." *Id.* at 642. (Emphasis added.) We choose not to follow the holding in *Freeman*.

Although we find no fault in the trial court's action in taking the matter under advisement, this issue would not be before us had the trial court rendered judgment immediately on November 15, 2001. Importantly, "[a]s between spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability." La.R.S. 9:2801(A)(4)(c). We do not find that the complexity of this litigation and the delay in rendering judgment justifies Ms. Sheridon receiving a windfall, particularly since the trial court awarded her ownership of the properties and obligated her to pay the balance due on the properties at the end of trial. Additionally, as pointed out by Mr. Sheridon, there is no evidence that Ms. Sheridon made any payments on either obligation after November 15, 2001. Any disagreement over subsequent payments would require continued litigation to establish the exact amount—thus, the purpose of requiring the "time of trial" valuation of La.R.S. 9:2801(A)(4)(a).

As a matter of law, the trial court lacked authority to reach beyond the evidence

3

presented at trial and purport to rule on matters occurring after the trial. Thus, we find merit in this assignment of error and reverse the trial court award of reimbursement of payments made by Ms. Sheridon on the obligations in question after November 15, 2001.

<em>Assignment of Error Number Two</em>

At a preliminary hearing held January 18, 2000, the parties entered into a stipulated judgment concerning, among other issues, Ms. Sheridon's right to continue to have the use and occupancy of the family home pending the ultimate division of the community property. The judgment further provided that, beginning January 1, 2000, Mr. Sheridon would pay to Ms. Sheridon, on a monthly basis, an amount equal to one half of the monthly obligation on the family home and that Ms. Sheridon would be responsible for timely forwarding the entire payment to the mortgage company. The trial court signed a judgment to this effect on March 31, 2000. Concerning the effect of these payments by both Mr. and Ms. Sheridon, the judgment provided:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that DIANE SHERIDON shall waive her right to reimbursement for the notes paid on the community home at this time, with said rights reserved as set forth below.
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that JONATHAN SHERIDON shall waive his right to rental reimbursement at this time, reserving his rights to claim rental reimbursement as set forth below.
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties are allowed to reserve their rights to ask for reimbursement for the notes paid and the waiver of the rental reimbursement after six months have elapsed from January 1st, 2000.

The trial court rejected Mr. Sheridon's claim for rental reimbursement from October 5, 1999, through November 15, 2001, and this rejection forms the basis of his second assignment of error.

With regard to the issue of rental for the use and occupancy of the family home,

4

La.R.S. 9:374(C) provides:

> A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court.

In *McCarroll v. McCarroll*, 96-2700 (La. 10/21/97), 701 So.2d 1280, the supreme court resolved the conflicts among the courts of appeal in interpreting this provision. Before *McCarroll*, the first and second circuits had held that the spouse having exclusive use of the matrimonial domicile would not be liable to the other spouse for rental payments absent an agreement by the parties at the time the occupancy began or a court order. *Id.* The third, fourth, and fifth circuits had held that La.R.S. 9:374(C) authorized the trial courts to award rental reimbursement at any time, including retroactively. *Id.* The supreme court concluded in *McCarroll*:

> Under the principles enunciated in *Juneau* [*v. Laborde*, 228 La. 410, 82 So.2d 693 (La.1955)], a co-owner in exclusive possession may be liable for rent, *but only beginning on the date another co-owner has demanded occupancy and has been refused.* This underlying principle amply supports the requirement that for the assessment of rent under La.R.S. 9:374(C), there must be an agreement between the spouse or a court order for rent contemporaneous with the award of occupancy.

*Id.* at 1290 (emphasis in the original).

In its reasons for judgment, the trial court noted that Mr. Sheridon never demanded occupancy of the family home and that, although he reserved his right to seek rental reimbursement in the January 18, 2000 judgment, the reservation did not equate to an agreement between the parties. Because Mr. Sheridon never demanded occupancy of the family home and because his reservation of rights did not equate to an agreement between the parties, as a matter of law, Mr. Sheridon is not entitled to

5

rental reimbursement. Accordingly, we find no error in the trial court's determination in this regard, and, thus, we find no merit in this assignment of error.

*Assignment of Error Number Three*

In this assignment of error, Mr. Sheridon asserts that the trial court erred in requiring him to reimburse Ms. Sheridon $4,110.25, representing one half of the amounts she paid between October 5, 1999, and November 15, 2001, on the note executed to finance the purchase of the Pontiac Firebird. In asserting this argument, he relies on this court's decisions in *Bergeron v. Bergeron*, 96-1586 (La.App. 3 Cir. 4/9/97), 693 So.2d 199, and *Preis v. Preis*, 94-442 (La.App. 3 Cir. 11/2/94), 649 So.2d 593, *writs denied*, 94-2939, 94-2942 (La. 1/27/95), 649 So.2d 392

In *Preis*, we cited jurisprudence from the other circuits to conclude that "a spouse who has the exclusive use of an automobile following the termination of the community, is not entitled to reimbursement or credit for notes paid on it." *Preis v. Preis*, 649 So.2d at 596. *Bergeron* reached the same conclusion.

However, another panel of this court, in *Nash v. Nash*, 01-766 (La.App. 3 Cir. 10/31/01), 799 So.2d 829, *writ denied*, 01-3154 (La. 2/1/02), 808 So.2d 344, concluded that La.Civ.Code art. 2365 governed the reimbursement issue, and declined to follow this court's holdings in *Preis* and *Bergeron*. The issue is now before us *en banc* to resolve the split within this circuit on this issue. In addressing this issue, we reaffirm our decisions in *Preis* and *Bergeron*.

Louisiana Civil Code Article 2365 provides:

> If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.

6

The phrase "upon termination of the community property regime" is crucial to our interpretation of La.Civ.Code art. 2365. The Article does not say "upon partition," but specifically uses the words "upon termination." Because of the specific language used, it is clear that the reimbursement scheme contemplated by La.Civ.Code art. 2365 pertains solely to debts paid *during* the marriage, and not those paid after divorce. Thus, Ms. Sheridon would be entitled, under La.Civ.Code art. 2365, to reimbursement for community debts she paid with separate funds *before* termination of the marriage. As such, La.Civ.Code art. 2365 is not applicable to the matter before us, and we specifically overrule this holding in *Nash*.

In doing so, we conclude that the trial court erred in ordering Mr. Sheridon to reimburse Ms. Sheridon one half of the amount she paid on the Pontiac Firebird between October 5, 1999, and November 15, 2001. Thus, we find merit in this assignment of error.

*Assignment of Error Number Four*

This assignment of error addresses Mr. Sheridon's complaints concerning the values placed on the family home, a 1995 Ford Taurus, a 1999 Pontiac Firebird, and a 1992 GMC truck. Mr. Sheridon asserts that the trial court erred in assigning values inconsistent with the evidence presented.

Jeanne Labove, an expert in real estate appraisals, testified on behalf of Mr. Sheridon and valued the family home at $164,000.00. Ms. Sheridon presented no expert testimony with regard to the value of the family home, nor did she provide the trial court with a formal appraisal of the property. Instead, she submitted as evidence of its value, the only offer made to purchase the property, $158,000.00. The trial court set the value at $160,000.00 for partition purposes. We may not reverse the trial court's valuation of the property absent an abuse of discretion. *Alford v. Alford*, 94-

7

1464 (La.App. 3 Cir. 4/5/95), 653 So.2d 133; *see also Ramstack v. Krieger*, 470 So.2d 162, 164 (La.App. 4 Cir.), *writ denied*, 474 So.2d 1310 (La.1985) (holding that the trial court did not err in failing to set the value of an asset at the amount testified to by the husband's expert, who was the only expert to testify on value at trial, and instead setting the value at an amount between that testified to by the expert and that urged by the wife in her descriptive list—"it was reasonable for [the trial court] to consider both parties' estimates of value in arriving at a compromise figure."). We find no abuse of the trial court's discretion in setting the value of the family home at $160,000.00.

Ms. Sheridon's evidence concerning the values of the automobiles was derived from her use of the Kelley Blue Book web site on the Internet. According to Ms. Sheridon, the web site provided that, as of May 29, 2001, the trade-in value of the Ford Taurus was $3,365.00 and the retail value was $6,620.00; the trade-in value of the Pontiac Firebird was $18,565.00; and the trade-in value of the GMC truck was $7,115.00.

Quenton A. Willis, Jr., an expert in valuation of vehicles, testified on behalf of Mr. Sheridon. Mr. Willis valued the Ford Taurus at $3,425.00, but further stated that its high milage precluded it from having any real value. Additionally, he valued the Pontiac Firebird at $19,225.00; the GMC truck at $5,200.00; and the Stratus boat, motor, and trailer at $9,230.00.

In its reasons for judgment, the trial court valued the Ford Taurus at $3,500.00; the Pontiac Firebird at $19,000.00; the GMC truck at $6,500.00; and the Stratus boat, motor, and trailer at $10,000.00. Again, while we recognize that the trial court did not accept the evidence presented by either side, we find no abuse of discretion in the setting of these values. Thus, we find no merit in this assignment of error.

8

These three assignments of error involve the allocation of assets and liabilities associated with a transaction between the Sheridons and Ms. Sheridon's mother, Catherine Richard. For that reason, we will consider them together.

The Sheridons had owned a Pontiac Bonneville automobile, but had disposed of it before Ms. Sheridon filed for divorce. Ms. Sheridon testified at trial that she possessed a power of attorney from her mother because Ms. Richard was in a nursing home and was incapable of handling her personal and financial affairs. She further testified that, in December of 1998, she and Mr. Sheridon still owed a balance on the original note wherein they had financed the purchase of the Pontiac Bonneville. According to Ms. Sheridon, they borrowed $9,800.00 from her mother and paid the balance due on the automobile note. This action, according to Ms. Sheridon, allowed her mother a better return on her investment than she had been receiving. At trial, Ms. Sheridon testified that she and Mr. Sheridon still owed Ms. Richard $800.00 on the original $9,800.00 loan. Mr. Sheridon denied any indebtedness to Ms. Richard. The trial court concluded that the obligation was due and owing, and assigned the $800.00 obligation to Ms. Sheridon. The recognition of this amount as a liability of the community is challenged in Mr. Sheridon's fifth assignment of error.

In addition to her testimony on this issue, Ms. Sheridon introduced exhibits reflecting a December 29, 1998 transfer of $9,800.00 from her mother's savings account to the Sheridon's Sulphur, Louisiana, CSE Federal Credit Union joint savings account. These exhibits also established a withdrawal of $9,800.00, from that account on the same day, as well as a payment of $6,987.96 on December 30, 1998, to the lender that had financed the Pontiac Bonneville purchase. Also, on December 30, 1998, the CSE Federal Credit Union records reflect a cash deposit into the joint

9

savings account of $2,812.04, being the difference between $9,800.00 and $6,987.96.

Ms. Sheridon testified that, on May 5, 1999, she paid her mother $2,000.00 on the loan. She also introduced a copy of the CSE Federal Credit Union statement for that period which reflected a withdrawal of $2,000.00 from the joint savings account on May 5, 1999. However, she did not directly pay her mother with these funds. Instead, she opened a new account at CSE Federal Credit Union in her name only on May 6, 1999, and transferred the $2,000.00 into that account. On that same day, she withdrew $9,800.00 from her mother's account and deposited it in this new account. The balance in that account at the time of trial was $12,041.68, with the difference between that balance and the original deposit representing accumulated interest. Ms. Sheridon asserted at trial that the funds in this account belonged to her mother. The trial court agreed, and this determination is the subject of Mr. Sheridon's ninth assignment of error.

On September 28, 1999, Ms. Sheridon withdrew $10,700.00 from the joint savings account in CSE Federal Credit Union. The bank record evidencing this withdrawal contains the hand-written notations "7,000 Pay back Mom" and "3,700.00 Checking." The record does not indicate the disposition of the $7,000.00, but records of First Federal Savings and Loan Association of Lake Charles, Louisiana, filed in evidence establish that $3,700.00 was deposited in a checking account in that institution on October 4, 1999. The balance in the First Federal Savings and Loan Association account for partition purposes was determined by the trial court to be $5,551.82. However, Ms. Sheridon testified that the $3,700.00 deposited in October of 1999 belonged to her mother, and the trial court accepted her testimony in that regard. Thus, the trial court recognized only $1,851.82 in the account as community property, and allocated the balance of $3,700.00 to Ms. Richard. Mr. Sheridon's

eighth assignment of error questions this award.

In all three instances, Ms. Sheridon testified that the funds at issue were owed by the community regime to her mother. All of the accounts at issue were opened during the existence of the community regime and are presumed to be community property. *See* La.Civ.Code art. 2340. Thus, Ms. Sheridon had the burden of proving the obligation to her mother. *See* La.Civ.Code art. 1831.

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id.* at 844.

In all three instances, the obligations at issue exceeded $500.00. The establishment of the existence of an obligation in excess of $500.00 requires proof "by at least one witness *and* other corroborating circumstances." La.Civ.Code art. 1846. (Emphasis added.) We find nothing in La.R.S. 9:2801 that reduces the burden of proof in a partition action.

With regard to the issues raised in the fifth and ninth assignments of error, Ms. Sheridon did produce corroborating evidence in the form of bank records tracing the transactions. While the records did not establish the veracity of her testimony, it did corroborate her testimony concerning the source of the funds at issue. Applying the manifest error standard to this evidence and considering the burden of proof required by La.Civ.Code art. 1846, we find no manifest error in the trial court's factual findings or its conclusion that the funds at issue belonged to Ms. Richard. Thus, we find no merit in these two assignments of error.

Mr. Sheridon's eighth assignment of error requires a different result. The only

evidence that the $3,700.00 belonged to Ms. Richard was the testimony of Ms. Sheridon alone. While the trial court found Ms. Sheridon to be credible in her testimony, her testimony alone was not sufficient. *Id.* The issue is not one of credibility, but of sufficiency of the evidence. In fact, the bank records produced reflect no connection between the transfer from the joint savings account and Ms. Richard. We find merit in this assignment of error, reverse the allocation of this asset to Ms. Richard, and allocate it equally between the Sheridons.

*Assignments of Error Numbers Six and Seven*

The actual expenses incurred in these two assignments of error are not disputed. However, because they do involve other factual disputes, we will address them together.

Between the filing of the divorce action and the trial on the merits, Ms. Sheridon incurred $233.03 in maintaining the family home. This total included $74.00 to Delta Testing, $127.50 to Trouth Air Conditioning, and $31.53 to Stine Lumber. The trial court ordered that Mr. Sheridon reimburse Ms. Sheridon for one half of this amount, or $116.52. In his sixth assignment of error, Mr. Sheridon asserts that this award is error.

At the time of the dissolution of the community of acquets and gains, the Sheridons also owned two boxers and a poodle, all three of which remained in Ms. Sheridon's possession. Between October 5, 1999, and November 15, 2001, she incurred $1,866.05 in expenses related to the care and feeding of the dogs. The trial court ordered that Mr. Sheridon reimburse Ms. Sheridon one half of that amount, or $933.03. Mr. Sheridon asserts in his seventh assignment of error that the award was in error.

After termination of the community of acquets and gains, each spouse is

12

obligated to preserve the former community property in his or her control. La.Civ.Code art. 2369.3; *Kline v. Kline*, 98-1206 (La.App. 3 Cir. 2/10/99), 741 So.2d 670. In fact, the standard imposed on the spouse having control of the property is higher than the standard imposed on ordinary co-owners of property. *Id.* at 328.

Concerning the repairs to the family home, Mr. Sheridon relies on *Knighten v. Knighten*, 00-1662 (La.App. 1 Cir. 9/28/01), 809 So.2d 324, *writ denied*, 01-2846 (La. 1/4/02), 805 So.2d 207, to assert that he should not be assessed with one half of the repair costs. In *Knighten*, the first circuit held that "[e]xpenses incurred between the termination of the community and partition of the community are awarded only when the party claiming reimbursement can prove that the work was necessary and that such work enhanced the value of the property." *Id.* at 328. The trial court found that not only was the work necessary and enhanced the value of the property, but also that Mr. Sheridon made untrue statements concerning the family home that necessitated the work. In its reasons for judgment, the trial court stated the following concerning this reimbursement issue:

> [Ms. Sheridon] stated that she incurred these expenses due to statements [Mr. Sheridon] made regarding the house's slab and electrical wiring. Linda Doucet, a realtor, corroborated [Ms. Sheridon's] testimony when she stated that [Mr. Sheridon] told her their [sic] was a cracked slab and electrical problems. Ms. Doucet passed this information on to [Ms. Sheridon], who had someone come out and address the slab and electrical wiring. [Mr. Sheridon] also noted these problems in the disclosure statement with the realtor.

We find no manifest error in the trial court's conclusion that the work was made necessary by the actions of Mr. Sheridon and thus was necessary and enhanced the value of the property.

Concerning the expenses for the dogs, the trial court reached the factual conclusion in its reasons for judgment that Ms. Sheridon was unable to dispose of the

dogs because of Mr. Sheridon's objection. We find no manifest error in these factual findings as well. Thus, we find no merit in either of these assignments of error.

<em>Assignment of Error Number Ten</em>

In August of 1999, Mr. Sheridon obtained possession of the 1995 Ford Taurus and paid $3,300.00 for it at the time of delivery. Thus, because it was acquired during the community of acquets and gains, it is presumed to be community property. La.Civ.Code art. 2340. The burden was upon Mr. Sheridon to establish that the vehicle was his separate property. He attempted to do so by producing a document dated November 16, 1999, purporting to be the bill of sale for the transaction. However, Ms. Sheridon produced the original bill of sale which was dated September 22, 1999, not November 16, 1999. Both documents were identical except for the dates. Ms. Sheridon also introduced a letter from the seller dated September 14, 1999, and an invoice reflecting the purchase of tires for the vehicle on August 28, 1999. The letter from the seller contained information concerning the sale.

Even assuming the authenticity of the November 16, 1999 bill of sale, "[o]wnership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid." La.Civ.Code art. 2456. By his own testimony, Mr. Sheridon had agreed to the sale and in fact paid the purchase price and accepted delivery in August of 1999. We find no merit in this assignment of error.

<em>Assignment of Error Number Eleven</em>

The 1992 GMC truck remained parked at the family home from October 5, 1999, to September 9, 2000. During that time, Mr. Sheridon paid a total of $531.60 in insurance premiums on the vehicle. He sought reimbursement for those insurance premiums on the basis that Ms. Sheridon refused to allow him to use the truck. The

14

trial court found as fact that, not only did Ms. Sheridon not refuse to let him use the truck, but that she also did not use it at all during that time. The trial court rejected Mr. Sheridon's claim for reimbursement. We find no manifest error in the trial court's factual findings in this regard and find no merit in this assignment of error.

*Assignment of Error Number Twelve*

On October 5, 1999, Mr. Sheridon had in his possession a Capital One credit card with a balance due of $5,067.18. The trial court rejected his request for reimbursement for that amount based on the fact that he did not present any evidence to establish which charges were personal and which were reimbursable business expenses. We find no error in this decision of the trial court in this regard and, therefore, we find no merit in this assignment of error.

*Assignment of Error Number Thirteen*

The trial on the merits had previously been scheduled for June 11, 2001. In preparation for that trial, Mr. Sheridon had a subpoena duces tecum issued to Ms. Sheridon for the production of various documents at that trial date. Ms. Sheridon did not comply. In his final assignment of error, Mr. Sheridon asserts that the trial court erred in not holding Ms. Sheridon in contempt of court for failing to comply with the subpoena duces tecum.

The trial scheduled for June 11, 2001, never took place, as it was continued to a later date. Additionally, at the next hearing scheduled for August 2001, Ms. Sheridon did produce the requested documents. In rejecting Mr. Sheridon's motion for contempt, the trial court stated that "[t]he Court finds that considering the case as a whole, the [sic] both parties did not comply with outstanding discovery requests timely and completely. Thus, the Court will not find Diane Sheridon in contempt."

We find no abuse of the trial court's discretion in this regard. Therefore, we

15

find no merit in this assignment of error.

## DISPOSITION

We reverse the trial court's reimbursement award to Ms. Sheridon ordering Mr. Sheridon to pay her one half of all payments made by her on the family home mortgage and the Pontiac Firebird indebtedness for the period of time from November 15, 2001, through August 15, 2002.

We reverse the trial court's reimbursement award to Ms. Sheridon ordering Mr. Sheridon to pay her $4,110.25, said amount representing one half of the amount paid by Ms. Sheridon to the lender that financed the purchase of the Pontiac Firebird.

We reverse that portion of the trial court's judgment recognizing that $3,700.00 of the First Federal Savings and Loan Association checking account was the property of Ms. Sheridon's mother, and we allocate each party $1,850.00 of that amount.

In rendering the judgments as set forth above, we amend the trial court judgment to adjust the equalizing payment due Mr. Sheridon from Ms. Sheridon by increasing it to $20,789.63, and ordering that Ms. Sheridon pay the $5,960.25 increase within six months of the rendition of this judgment.

We affirm all other aspects of the trial court judgment and assess costs of this appeal equally to Jonathan Sheridon and Diane Sheridon.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### CA 03-103

**DIANE M. SHERIDON**

**VERSUS**

**JONATHAN SHERIDON**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 99-6303
HONORABLE LILYNN A. CUTRER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

COOKS, J. dissenting in part and concurring in part.

I join Judge Woodard and Judge Amy in dissenting from that portion of the majority's opinion reversing the trial court's reimbursement award to Ms. Sheridon for payments made on the Pontiac Firebird. I also dissent from that portion of the opinion reversing the trial court's reimbursement award for payments made by her on the family home mortgage between November l5, 2001, through August 15, 2002.[1]

The car and home mortgage obligations were *incurred during the existence* of the community regime. Both spouses were obligated to pay these indebtedness in full. Their obligations to the mortgage holders to pay the mortgages in full were not dependant on which spouse "controlled or possessed" the property during or following termination of the community property regime. Failure to pay the mortgages would have resulted in both spouses sustaining injury to their credit reputations and the mortgage holders would have been legally entitled to pursue foreclosure proceedings seeking seizure and sale of the assets and recoupment of any

---

[1] The necessity of maintaining insurance coverage on the l992 GMC truck which remained parked at the family home from October 5, 1999 to September 9, 2000 is a question of fact. For that reason, I join the majority in affirming the trial judge's denial of Mr. Sheridon claim for reimbursement of premium paid on the truck.

outstanding indebtedness, after sale, from either or both spouses. Whether La.Civ.Code art. 2365 or La.Civ.Code art. 806 controls, the bottom line is the majority's "all or nothing" approach was never contemplated by the redactors of the Louisiana Civil Code and clashes with the financial security scheme affecting mortgage instruments. The rules relating to the interpretation of laws and equity in general demands a more just, stable, and sound result than that proposed by the majority.

NUMBER 03-103

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

DIANE M. SHERIDON, BORN RICHARD

Plaintiff - Appellee

Versus

JONATHAN SHERIDON

Defendant - Appellant

On appeal from the Fourteenth Judicial District Court [No. 99-6303], for the Parish of Calcasieu, State of Louisiana; the Honorable Lilynn Cutrer, District Judge, presiding.

Woodard, J., dissenting in part, concurring in part.

Respectfully, I dissent, in part, from the majority's opinion.

Whose responsibility is it to make the payments on a *community* obligation *before* the trial court allocates liability for that obligation in a partition judgment? The majority's decision implies that it is the spouse to whom the trial court *will* allocate liability *in the partition*. The problem, of course, is that the former spouses do not know which liabilities the trial court will allocate to them in the partition judgment, until it actually does so.

The majority decides that Article 2365's reimbursement allowance is inapplicable to payments of separate property made on community obligations, if those payments were made after the community's termination, even though the community has not yet been partitioned. At the same time, however, it emphasizes that assets are to be valued *at the time of trial*. This results in a windfall to the non-paying spouse.

For example, if one spouse makes payments on a community debt with separate funds, the benefit inures to *both* spouses because lowering the amount of debt on a community obligation, necessarily, increases the net value of the community's assets.

Thus, the time of trial valuation will reflect this increase and the non-paying spouse will, then, benefit from one-half of the increase in value, without having to reimburse the spouse who caused the increase in value.

Accordingly, I believe that both the law and equity require reimbursement in such situations. Until the court assigns liability to one of the former spouses, *both* remain responsible for community obligations. Therefore, when one spouse pays such an obligation with separate funds, s/he should have the right to be reimbursed by the other spouse.

Notwithstanding, the majority refuses to apply Article 2365 because it contains the language "upon termination of a community property regime." Indeed, this language is used consistently in the reimbursement articles.[1] However, the limitation that this language imposes on reimbursement is, simply, that there is no entitlement to demand reimbursement while the spouses are still living together in community under the community property regime. La.Civ.Code art. 2358 supports this proposition, as it provides:

> Upon termination of a community property regime, a spouse may have a *claim* against the other spouse for reimbursement in accordance with the following provisions.

Thus, the *claim* for entitlement does not arise until the community terminates.[2] Neither this article nor La.Civ.Code art. 2365 provides that such entitlement is limited to that certain point in time when the community terminates. Merely, it is at that point that a spouse may request reimbursement.

In *Nash v. Nash*, a panel of this court refused to follow the *Preis* and *Bergeron* rule that when a spouse has the exclusive use of a vehicle after the community terminates, that spouse has no right of reimbursement or credit for amounts s/he paid on it after termination. The court today, not only, overrules *Nash v. Nash*,[3] but effectively obliterates a former spouse's right to claim reimbursement for payments

---

[1]*See* La.Civ.Code arts. 2358, *et. seq*.

[2]*See Reinhardt,* 728 So.2d 423.

[3]01-766 (La.App. 3 Cir. 10/31/01), 799 So.2d 829.

2

made with separate funds, not just on an automobile, but on *any* community obligation, if those payments were made after the community terminated.

Interestingly, while the majority finds Article 2365 inapplicable in these situations, it does not provide us with an *applicable* legal authority which supports its finding. Merely, it states:

> La.Civ.Code art. 2365 is not applicable to the matter before us, and we specifically overrule this holding in *Nash*. In doing so, we conclude that the trial court erred in ordering Mr. Sheridon to reimburse Ms. Sheridon one half of the amount she paid on the Pontiac Firebird between October 5, 1999, and November 15, 2001.

Presumably, the majority is basing its ruling on the same equitable principles apparent in *Bergeron* and *Preis*. However, when we trace this equitable principle back to its origin, we find that it was first applied in a situation *distinguishable* from the instant one. This premise appears to have originated in *Gachez v. Gachez*,[4] a fifth circuit case, in which there were very different and extenuating circumstances. Specifically, in *Gachez*, the trial court denied the husband's reimbursement claim for payments he had made on a vehicle during the time he had exclusive use of it. The wife had used the car for one year after the divorce, but before partition, and she had paid all the notes on it during that time. She returned the car to the husband, who used it exclusively and made the payments for approximately seventeen months. Afterwards, he tried to obtain reimbursement for his payments. The wife did not seek reimbursement for the payments she made during the year that she had used the car. Thus, the trial court denied him reimbursement, stating, "*Equity* would dictate that appellant should not have the full use, benefit and enjoyment of the moveable at the expense of the wife, *who by the same token enjoyed the use of the vehicle and paid the notes the previous year*, prior to returning the automobile to him."[5] (Emphasis added.)

Despite *Gachez'* unique set of facts and its decision, which *deviated* from codal authority, without recognizing *Gachez'* different circumstances, subsequent cases

---

[4]451 So.2d 608 (La.App. 5 Cir. 1984).

[5]*Id.* at 614.

began citing it for the proposition that *any time* one spouse had exclusive use of a vehicle, s/he was not entitled to reimbursement.[6]

In fact, with one exception—*Stewart v. Stewart*[7]—every case that I reviewed, which found that when one spouse had exclusive use of a vehicle s/he was not entitled to reimbursement, can be traced back to *Gachez* as its *authority,* including *Preis* and *Bergeron*.

Uniquely, in *Stewart*,[8] a panel of this court provided a codal basis—La.Civ.Code art. 806—for its denial of reimbursement to a spouse for "*maintenance* expenses" on two former community vehicles during the time that the spouse had exclusive use and enjoyment of them. It pointed out that after termination of the community but before partition, spouses were co-owners in indivision of property;[9] thus, it postulated that La.Civ.Code art. 806 should govern the reimbursement of expenditures that one spouse made from separate funds for an automobile that the spouse exclusively used. La.Civ.Code art. 806 provides:

> A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares. If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.

While *Stewart* is ambiguous in that the court does not specify the type of "expenses" incurred in maintaining the vehicles at issue, I surmise that, when discussing "*maintenance* expenses," the court was actually referring, either, solely to payments made on the car note or to payments made on the note, as well as additional

---

[6]*See e.g., Gachez v. Gachez*, 451 So.2d 608 (La.App. 5 Cir.), *writ denied*, 456 So.2d 166 (La.1984); *Davezac v. Davezac*, 483 So.2d 1197 (La.App. 4 Cir. 1986); *Dillenkoffer v. Dillenkoffer*, 492 So.2d 71 (La.App. 5 Cir. 1986), *writ denied*, 494 So.2d 333 (La.1986); *Meyer v. Meyer*, 553 So.2d 943 (La.App. 4 Cir. 1989); *Guillaume v. Guillaume*, 603 So.2d 235 (La.App. 4 Cir. 1992); *Preis v. Preis*, 94-442 (La.App. 3 Cir. 11/2/94), 649 So.2d 593; *Bergeron v. Bergeron*, 96-1586 (La.App. 3 Cir. 4/9/97), 693 So.2d 199.

[7]98-496 (La.App. 3 Cir. 12/16/98), 728 So.2d 473.

[8]728 So.2d 473.

[9]*Id.*; *See also* La.Civ.Code art. 2369.1.

expenses for maintenance and upkeep, since the cases on which it relies involve payments made on the car note. *Stewart* did not distinguish between the two. However, the distinction is critical.

Namely, La.Civ.Code art. 806 applies to "necessary expenses." Necessary expenses include expenses for property taxes and assessments, indispensable repairs and maintenance costs, and insurance costs.[10] A mortgage or note obligation is not the type of "necessary expense" which Article 806 covers.[11] Instead, a mortgage is "a non-possessory right created over property to secure the performance of an obligation."[12] Accordingly, by definition, each monthly charge does not represent a new obligation; rather, payments made on a mortgage constitute performance of one *existing* obligation incurred for ownership of the automobile. Likewise, when one incurs a personal loan, as in the instant case, the obligation to repay the loan in full arises when the loan is incurred;[13] monthly payments on the loan are no more than performance of the existing obligation.

Louisiana Civil Code Article 806 applies to expenses *incurred* while the spouses are co-owners. Spouses are not considered to be, simply, "co-owners" until after their community ends.[14] Rather, generally, before the community terminates, they each own a present undivided one-half interest in the community property.[15] This distinction is important because different Louisiana Civil Code articles apply to the two labels.

In the instant case, I believe that La.Civ.Code art. 806 is not appropriate to deny Ms. Sheridon reimbursement for the notes she paid on the former community vehicle, first, because the article did not contemplate governing this type of obligation—a note—and, even if it did, she did not incur the obligation when she was a *co-owner*,

---

[10]*See* La.Civ.Code art. 527 (cmt. (b)).

[11]*Roque v. Tate*, 93-389 (La.App. 5 Cir. 2/9/94), 631 So.2d 1385; *Cahill v. Kerins*, 34,522 (La.App. 2 Cir. 4/4/01), 784 So.2d 685; *Lupberger v. Lupberger*, 00-2571 (La.App. 4 Cir. 12/5/01), 806 So.2d 264.

[12]La.Civ.Code art. 3278.

[13]La.Civ.Code art. 2913.

[14]La.Civ.Code art. 2369.1.

[15]La.Civ.Code art. 2336.

5

as the article requires. Instead, the time of purchase was during the community property regime; thus, the community incurred the obligation at that time.[16]

Thus, the debt remains a community obligation until the court declares otherwise in the partition judgment even though under La.Civ.Code art. 2369.1, the parties become co-owners of the property upon termination of the community and before partition. In other words, La.Civ.Code art. 2369.1 cannot transform the nature of an obligation already incurred from that of a "community obligation" to an "obligation incurred by co-owners." Accordingly, La.Civ.Code art. 2365 governs reimbursement for payments made on a community obligation after the community ends.

Thus, I disagree with the majority's analysis in the third assignment of error, reversing Ms. Sheridon's award of reimbursement for payments she made on the Pontiac Firebird note.

Likewise, I disagree with the court's analysis in the eleventh assignment of error, affirming the trial court's denial of Mr. Sheridon's request for reimbursement for insurance premiums he paid on the 1992 GMC truck.

Insurance premiums *are* the type of necessary expenses, incurred between termination and partition, that the co-ownership articles govern.[17] La.Civ.Code art. 2369.3 imposes on a former spouse an affirmative "duty to preserve and to manage prudently former community property under his control . . . in a manner consistent with the mode of use of that property immediately prior to termination of the community regime." However, when a spouse does not have the former community property "under his control," s/he is not bound by this *duty*.[18] Nevertheless, s/he has the *right* to incur necessary expenses for maintenance and management.[19] Further, by exercising this right, s/he is entitled to reimbursement from her spouse /co-owner for one-half of such expenses.[20] Insurance premiums are "necessary expenses" under the

---

[16]*Roque,* 631 So.2d 1385; *See also Kline v. Kline,* 98-1206 (La.App. 3 Cir. 2/10/99), 741 So.2d 670.

[17]La.Civ.Code art. 2369.1.

[18]La.Civ.Code art. 2369.3 (cmt. (g)).

[19]La.Civ.Code art. 2369.3 (cmt. (a)); La.Civ.Code art. 806.

[20]La.Civ.Code art. 806.

6

articles of co-ownership.[21]  In interpreting La.Civ.Code art. 2314, the predecessor to La.Civ.Code art. 527, the Louisiana Supreme Court, explicitly, viewed insurance as a necessary expense for which a co-owner is entitled to reimbursement.[22]

Therefore, I believe that Ms. Sheridon owes Mr. Sheridon reimbursement for these insurance premiums.  La.Civ.Code art. 806 provides that "[i]f the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment."  In the instant case, Mr. Sheridon did not have the enjoyment of the vehicle.  Accordingly, I would reverse the trial court's ruling on this issue and award him reimbursement for the insurance premiums that he paid on the truck.

I concur in the remainder of the judgment.

---

[21]La.Civ.Code art. 527 (cmt. (b)).

[22]*Sharp v. Zeller*, 114 La. 549, 38 So. 449, 451 (1905).

**DIANE M. SHERIDON**

**VERSUS**

**JONATHAN SHERIDON**

AMY, J., dissenting in part and concurring in part.

I respectfully dissent from that portion of the majority opinion addressing Ms. Sheridon's claim for reimbursement for payments made on the Firebird and on the home mortgage between termination of the community property regime and partition for the following reasons.

A pivotal step in resolving the matter on appeal is determining whether La.Civ.Code art. 2365 applies to post-divorce reimbursement. Like the majority, I interpret the codal language as indicating that the article applies only to payments made *during the marriage* and that reimbursement under La.Civ.Code art. 2365 would be due the payor spouse only where community debts are paid with that spouse's separate property *before* termination of the community. Our focus in the instant matter is solely upon the time period between termination of the community and partition. Based on my reading of the article, it is my view that the language of La.Civ.Code art. 2365 precludes its application in the present appeal.

Unlike the majority, however, I do not believe the issue before us on appeal should be decided according to *Preis v. Preis*, 94-442 (La.App. 3 Cir. 11/2/94), 649 So.2d 593, or *Bergeron v. Bergeron*, 96-1586 (La.App. 3 Cir. 4/9/97), 693 So.2d 199. In my opinion, the resort to equitable principles evident in those cases is inappropriate in light of the Civil Code's clear preference for exhaustive application of law before turning to equitable relief. *See* La.Civ.Code art. 4. Instead, I consider instructive the

Louisiana Supreme Court's decision in *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00), 774 So.2d 119, wherein the Court stated:

> The Civil Code establishes only two sources of law in Louisiana: legislation and custom. *See* La.Civ.Code art. 1. Within these two categories, legislation is superior to custom and will supercede it in every instance. *See* La. Civ.Code art. 3. Judicial decisions, on the other hand, are not intended to be an authoritative source of law in Louisiana. *See* A.N. Yiannopoulos, *Louisiana Civil Law System* § 35, p. 53 (1977).

*Doerr*, 774 So.2d at 128.

I approach the reimbursement problem from a different perspective than does the majority: that of co-ownership in indivision. In this regard, La.Civ.Code art. 2369.1 states, in pertinent part, as follows: "After termination of the community property regime, the provisions governing co-ownership apply to former community property, unless otherwise provided by law or by juridical act." Louisiana Civil Code Article 2369.2 provides that in this co-ownership arrangement, "Each spouse owns an undivided one-half interest in former community property and its fruits and products." *See Dhuet v. Taylor*, 383 So.2d 1061 (La.App. 1 Cir. 1980); *McAdams v. McAdams*, 267 So.2d 908 (La.App. 1 Cir. 1972).

Louisiana Civil Code Article 806 governs co-ownership in indivision outside the context of community property, *viz.*, ordinary co-ownership in indivision. This article provides as follows:

> A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.

> If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.

It logically follows from the second paragraph of La.Civ.Code art. 806, then, that if a co-owner has exclusive use and enjoyment of a co-owned thing, and if he has paid amounts toward the satisfaction of acquisition indebtedness of the co-owned thing,

2

then he would, indeed, have the *right* to reimbursement, but the *amount* of reimbursement would be susceptible to reduction proportionate to the value of his enjoyment of the thing. In addition, this concept of reimbursement would be no different in application to former community property, as it is treated as property co-owned in indivision. Termination of the community property regime occurs at divorce; termination of the state of co-ownership occurs at partition.

Accordingly, payments made on community indebtedness during this interim period should be dealt with via equalizing payments or a greater allocation of community property to the payor spouse during the partition trial. Contrary to the positions taken in *Preis* and in *Bergeron*, and applied by the majority herein, reimbursement should not be an all-or-nothing proposition. By virtue of La.R.S. 9:2801, the trial judge is vested with decision-making power as to asset valuation and as to the amount of equalizing payments required to make the shares of former community property received by each spouse more balanced. Under La.Civ.Code art. 806, the trial judge has similar ability to determine the value of a spouse's exclusive use for the time period between termination and partition vis-à-vis the payments made on the property. All types of property for which payment was made with separate funds for the period between termination and partition are encompassed by the above codal analysis, consequently eliminating the confusion that exists as to whether reimbursement in these situations hinges upon the subject property's classification as movable or immovable. This analysis also obviates any controversy surrounding the amount of reimbursement to be given. Pursuant to La.Civ.Code art. 806, a spouse is not automatically entitled to one-half of such payments made; instead, a trial judge is to determine the amount of reimbursement to be awarded on a case-by-case basis.

In my opinion, based upon the above application of La.Civ.Code art. 806, the portion of the judgment dealing with reimbursement for the car payments should be

3

vacated and remanded for determination of the proper amount of reimbursement. Similarly, that portion of the judgment dealing with reimbursement for mortgage payments should likewise be vacated and remanded. Accordingly, I dissent from the majority's disposition on the issue of reimbursement.

As to the remainder of the majority opinion, I concur.